■ EDWARD BACHORIK, Respondent, v. ALLIED CONTROL COMPANY, INC., et al., Appellants.

Order, entered on February 2, 1970, denying defendants' cross motion for summary judgment, unanimously reversed, on the law, with $50 costs and disbursements to appellants, motion denied and cross motion granted and the complaint dismissed.

The complaint, which seeks rescission of plaintiff's release of option rights or damages on the grounds of duress and undue influence, contains allegations of the most tenuous nature. Plaintiff's claims that defendants took advantage of " the infirmities of the plaintiff [and]  *  *  *  fraudulenty over-persuaded and unduly influenced [him] ", that defendants " prevailed upon and falsely advised [him] ", that they " refused to permit the plaintiff an opportunity to consult with counsel of plaintiff's choice", that " plaintiff mistakenly relied on the representations of the defendants" and others, are all either completely without merit or negated by the clear and frank answers which the plaintiff

gave upon his pretrial examination. He thereat testified in part as follows:

" Q. Will you please look at the waiver instrument, Exhibit 8? Did you ask Mr. Whalen [counsel to and director of corporate defendant] or anyone else at the meeting for an interpretation of that instrument, as to what it meant?

" A. No. The instrument was pretty clear, and I didn't receive any explanation, nor did I ask for any. * * * The fact is, is it not, that you did understand fully the nature of what you were signing here in terms of the waiver of rights under the stock option agreement. Is that not so?

" A. I understood what this release would mean. * * *

" Q. * * * did you ask for an opportunity to consult with counsel?

" A. No, I did not."

Plaintiff's answers clearly indicate that there was neither misrepresentation nor mistake with regard to what was being offered to him in return for his execution of the option release, namely: severance pay and the opportunity to voluntarily resign. With regard to this his pretrial deposition indicates as follows:

" Q. Don't you recall that in connection with the proposal that was made to you that it was stated that if you followed this course of action that the company would say that in explanation of your termination, that it was a voluntary resignation due to differences of policy?

" A. That conversation is quite right, now that you mention it. In other words, if I were to sign this [release] well, it was a resignation with pension rights and also six months possible severance pay, and whatever; right.

" Q. So that if I understood you correctly, the substance of the discussion, and recognizing that you can't recall exactly what was said, the substance of the discussion was that you were being given this opportunity to resign voluntarily as opposed to involuntary action, with the explanation by the company to anybody who asked, that your resignation was voluntary and flows out of a difference in policy, with your salary continued for six months unless you got earlier employment elsewhere?

" A. Yes."

Plaintiff's claims of duress and undue influence are based upon the allegations in paragraph 13th of his complaint that there was a " prior relationship of trust and confidence " between himself and the other individuals who attended the meeting at which he resigned and released his option rights and that they improperly utilized this relationship and falsely advised him that " the signature of the waiver of the stock option agreements was both requisite and necessary in connection with the plaintiff's resignation from his employment by the defendant, Allied, and its corporate affiliate ". The plaintiff's testimony at his pretrial deposition negates the claim of a prior relationship of trust and confidence and indicates merely an internal business relationship.

Plaintiff testified as follows:

" Q. Of the people who were at that meeting, Mr. Von Egloffstein was chairman of the board of Allied Control Company.

" A. That is correct.

" Q. The company of which you had been executive vice president?

" A. That is correct.

" Q. Apart from that relationship, was there any other business or professional relationship between you and Mr. Von Egloffstein?

"A. None.

"Q. At that time Mr. Gillette was president of the company of which you were executive vice president?

"A. Yes.

"Q. Was there any prior business or professional relationship between you and Mr. Gillette, other than the Allied Control Company relationship?

"A. None.

"Q. And the same question as to Mr. Whalen.

"A. None."

His testimony further demonstrates that the events surrounding his resignation did not contain the elements of wrongful conduct necessary to establish the claims of duress and undue influence. What plaintiff relies upon is the fact that he was told that he would be involuntarily discharged, without severance pay and that this might be disclosed to prospective employers. This can neither be considered a threat, nor false advice, since defendants had the right to discharge plaintiff, who was an employee at will, were not under any duty to continue his salary and were privileged to inform prospective employers of the circumstances surrounding the termination of his employment. A threat to do that which one has the legal right to do does not constitute duress or fraud. (*Oleet* v. *Pennsylvania Exch. Bank,* 285 App. Div. 411.)

Plaintiff's answers on his pretrial examination leave nothing of a material nature for resolution at a trial.

The validity of plaintiff's claims is further diminished by his long delay in bringing this action (until after the value of the corporate defendant's common stock had greatly appreciated in value).

Concur — Capozzoli, J. P., Markewich, Nunez and Steuer, JJ.