## In the Matter of KAREN PODMORE, Appellant, v OUR LADY OF VICTORY INFANT HOME, Respondent.

Fourth Department, July 9, 1981

APPEARANCES OF COUNSEL

*Labin & Buffomante (Thomas Labin* of counsel), for appellant.

*Louie Russell* for respondent.

OPINION OF THE COURT

DENMAN, J.

We are asked to decide whether petitioner's infant daughter should be returned to her or remain with her adoptive parents. We hold that petitioner irrevocably surrendered her child for adoption and that she should remain with her adoptive parents.

At the age of 19 petitioner Karen Podmore gave birth to a female child out of wedlock on July 1, 1979 at Our Lady of Victory Infant Home (Home), the respondent herein. The petitioner had resided at the Home since January, 1979. When petitioner left the Home on July 6, 1979, she left her child in the care and custody of respondent. For some period between July and December, the child, Stacey Lynn, was placed in a foster home where petitioner visited her once or twice a week. On November 26, 1979 petitioner executed a surrender of the infant to respondent for adoption. On December 12, 1979 Stacey Lynn was placed in the home of adoptive parents. Petitioner commenced the proceedings to annul the surrender agreement on April 4, 1980. Respondent's motion for summary judgment dismissing the petition and upholding the validity of the surrender agreement was granted. Petitioner appeals, alleging that there are triable issues of fact and that a hearing is necessary to determine the best interests of the child.

Respondent is a certified agency duly authorized under article 6 of the Social Services Law. Subdivision 5 of section 384 of the Social Services Law governs the surrender agreement involved here. That section, as well as the surrender

agreement itself, provides that: "no action or proceeding may be maintained by the surrendering parent * * * to revoke or annul such surrender where the child has been placed in the home of adoptive parents and more than thirty days have elapsed since the execution of the surrender". The section specifically provides, however, that actions brought on grounds of fraud, duress or coercion in the execution or inducement of a surrender are not barred.

Petitioner contends that the child was not "placed in the home of adoptive parents" but remains in a foster home; that at the time she signed the surrender document she was under duress thus rendering it invalid; and that she did not sign the surrender with full knowledge of what she was signing. With respect to the first issue, there is no question that the child was placed in an adoptive home on December 12, 1979. Respondent's executive director stated in her verified answer and in her affidavit in support of the motion for summary judgment that the child was placed in the home of adoptive parents on that date. Additionally, Family Court ordered that the adoptive parents be notified of their right to appear in the proceedings and they did appear by counsel. The names of the adoptive parents were listed in a bound volume as required by the statute and the validity of that entry was stipulated to by petitioner's attorney.

■ Petitioner claims that she signed the surrender document under duress. That claim is based on the fact that John Turner, her boyfriend, threatened to discontinue their relationship if she kept the baby. Petitioner does not claim that respondent exerted duress or coercion to compel her to sign the surrender, nor does she state that she was under parental duress. To the contrary, her mother accompanied her when she executed the surrender, was apparently opposed to it and attempted to dissuade petitioner. A contract is voidable on the ground of duress when a party establishes that he was forced to agree to it by means of a wrongful threat which precluded the exercise of his free will (*Austin Instrument v Loral Corp.*, 29 NY2d 124, 130, mot for rearg den 29 NY2d 749). In order to form an element of duress, the threat must be wrongful. "A threat to do that which one has the legal right to do does not constitute

duress" *(Bachorik v Allied Control Co.,* 34 AD2d 940, 942). And finally, "[a] crucial element of coercion or duress is lack of free choice. The circumstances involved must be such that the party * * * had no practical alternative open to him" *(Korn v Franchard Corp.,* 388 F Supp 1326, 1333). John Turner's "threat" to petitioner was not wrongful; he had every right to discontinue their relationship regardless of whether petitioner kept her baby. Additionally, although it may have provided the motive for Karen's surrender of her baby, it cannot be said that her will was overborn and that she was not capable of exercising free choice.

In determining what constitutes "duress" in obtaining a parent's consent to adoption of a child, the courts have not construed suggestion, persuasion, arguments or entreaties as exerting the kind of force which would constitute coercion on the consenting parent. Thus persuasion by a church official *(Anonymous v Anonymous,* 23 Ariz App 50); pressure by the surrendering mother's family and fiancé *(People ex rel. Drury v Catholic Home Bur.,* 34 Ill 2d 84); advice by the surrendering parent's doctor, priest and mother *(Matter of Giambrone,* 262 So 2d 566 [La]); parental threats *(Batt v Nebraska Children's Home Soc.,* 185 Neb 124); mental or emotional stress, depression, etc. *(Anonymous v Anonymous,* 23 Ariz App 50, *supra; Matter of Simaner,* 16 Ill App 2d 48, affd 15 Ill 2d 568; *Matter of Surrender of Minor Children,* 344 Mass 230) have been found insufficient to overturn a surrendering mother's consent. Factors which have been found to negate duress are support of family and friends *(Anonymous v Anonymous, supra; Matter of Wojtkowiak,* 14 Ill App 2d 344); and opportunity to reflect and consider alternatives *(Anonymous v Anonymous, supra; Matter of Wojtkowiak, supra; People ex rel. Drury v Catholic Home Bur., supra;* see, generally, Ann., 74 ALR3d 527).

In *Matter of T. W. C.* (48 AD2d 893, affd 38 NY2d 128) the court affirmed a decree of Surrogate's Court dismissing an unwed mother's application to revoke her consent to the adoption where she had managed to support the child for 14 months but, deserted by her lover, disowned by her father, estranged from her mother, and without funds, she was prevailed upon to surrender her child. In affirming the Appellate Division, the Court of Appeals noted that

she had received a thorough explanation of the consequences of surrendering her child from the Surrogate, the adoption clerk of the court and from the attorney for the adoptive parents.

Our review of the cases indicates that the allegations of petitioner herein are clearly inadequate to constitute coercion or duress. The only facts in support of her argument that she was under duress when she signed the surrender are that her boyfriend threatened to leave her and that it was a traumatic experience to have a child out of wedlock at her age. The comments of Surrogate BENNETT in *Matter of E. W. C.* (89 Misc 2d 64, 72) quoting from his own unreported decision in *Matter of T. W. C. (supra) (Matter of Anonymous*, NYLJ, Dec. 18, 1974, p 17, col 6), seem particularly appropriate here: " ' "Contemplation of the surrender of one's own child is in many, if not all, cases a cause of emotional and mental stress. Many such surrenders are undoubtedly by mothers of children born out of wedlock and are contemplated because the trying circumstances tend to show that the welfare of the child calls for action at variance with that dictated by natural instincts of maternal love and affection. No statute has said that surrenders are valid only if executed free from emotion, tensions and pressures caused by the situation. No principle of law requires the rule. A balance of the interests of the persons concerned and of society weighs strongly against it." ' *(Matter of Surrender of Minor Children*, 344 Mass 230.)"

Lastly, petitioner argues that the surrender document is invalid because she did not sign it with full knowledge and understanding of what she was doing. She contends that she was not properly counselled with respect to the means for regaining her baby after signing the document; that she was so emotionally unstable that she was unable to make a final decision; and that she was of unsound mind and incapable of making a rational decision to surrender her child. Nothing in the record supports these allegations.

To the contrary, the record discloses that advice with respect to surrendering the child was offered to petitioner

by the counsellors at the Home both before and after the birth of Stacey Lynn; that she was advised of the availability of public assistance, the procedure for applying for it, and was offered help in applying for it; that after giving birth, petitioner had five months to contemplate the decision to surrender her child; that it was she who contacted her counsellor on November 26 and asked her to arrange for the surrender; that the ramifications of the surrender document were explained to her and that she was asked if she understood; that petitioner's mother accompanied her at the time she executed the surrender and urged her not to surrender the child; that she was given a copy of the document; that although she claims to have had a change of heart on December 20, 1979, she did not make an attempt to contact her counsellor or any other employee of respondent and did not begin an action until April 4, 1980.

Petitioner claims that she notified respondent of her change of heart by indicating to the foster mother with whom the child had been staying that she regretted her action. Even if the foster mother were an agent of respondent, and nothing indicates that she is, such a statement cannot be construed as an intent to revoke the surrender. It is merely an expression of regret and cannot overcome the bar of the Statute of Limitations contained in subdivision 5 of section 384 of the Social Services Law.

One final point is urged by petitioner: that the court should have conducted a hearing to determine the best interests of the child. The cases cited by petitioner as requiring such a hearing are distinguishable from the case before us. *Matter of Bennett v Jeffreys* (40 NY2d 543) involved a situation in which a young unwed mother gave her child over to the custody of an older family friend immediately after the child's birth. Eight years later, when the natural mother was 23 years old, she attempted to regain custody of the child. The matter before the court, therefore, was not a question of the right of adoptive parents or whether the natural mother had ever executed a surrender but simply the custodial arrangement which would be in the best interests of the child.

In *People ex rel. Patricia "BB" v Albany County Dept. of*

*Social Servs.* (47 AD2d 974), relied on by petitioner, the natural mother had surrendered her child to an agency for adoption but the child had not been placed for adoption. Forty-eight days after her surrender to the agency petitioner sought return of her child by court action. The Court directed that a hearing be held to determine whether the best interests of the child would be served by returning the child to the natural mother or by allowing the child to be placed in an adoptive home. The court specifically distinguished that situation from the case such as that before us. Discussing the presumption that the best interests of the child will be promoted.by returning a child to its natural parent *(People ex rel. Scarpetta v Spence-Chapin Adoption Serv.,* 28 NY2d 185; *People ex rel. Kropp v Shepsky,* 305 NY 465), the court noted that such presumption has been overcome when preadoption placement has occurred pursuant to the terms of subdivision 5 of section 384 of the Social Services Law. To require a hearing to determine the best interests of the child would be contrary to the intent of the Legislature to provide for finality when, as here, the statutory requirements have been met.

It is only natural for a young woman under the trying circumstances experienced by petitioner to feel regret, self-recrimination and guilt at having given up her child. Whereas that is certainly understandable, her doubt and confusion in the matter is illustrated by the fact that she failed to take any affirmative action until over four months after her execution of the surrender. The adoptive parents have had the child for 18 months during which time strong bonds of love have undoubtedly developed. To wrest her from them would not only be cruel, but would be in direct contravention of the policy expressed in the statute. The order of Family Court dismissing the petition is therefore affirmed.

SIMONS, J. P., HANCOCK, JR., DOERR and SCHNEPP, JJ., concur.

Order unanimously affirmed, without costs.