■ In the Matter of BABY BOY L. MR. ANONYMOUS et al., Appellants; NICOLE L., Respondent.—In an adoption proceeding, the appeal is from an order of the Family Court, Richmond County (Meyer, J.), dated July 1, 1988, which, inter alia, after a hearing, granted the natural mother's application to set aside her extrajudicial consent to adoption and denied the petition for adoption.

Ordered that the order is reversed, on the law and the facts, without costs or disbursements, the application to revoke consent to adoption is denied, and the matter is remitted to the Family Court, Richmond County, for a best interest hearing on the petition for adoption, before a different Judge.

On January 12, 1988, the natural mother Nicole L., a 17-year-old high school student, gave birth, out of wedlock, to the child who is the subject of this proceeding. Two days subsequent to the birth, Nicole executed consent forms to surrender the child for adoption. Approximately 10 days thereafter, Nicole sought to revoke her consent, claiming that she was under duress when she executed the forms. Following a hearing, the Family Court granted Nicole's application to vacate her extrajudicial consent to the adoption. In so ruling, the court found, *inter alia,* that the documents which provided for the surrender of the child were executed under duress and that the "pressures upon Nicole seriously interfered with [her] judgment and ability to make an independent, knowing and voluntary consent to adoption".

The prospective adoptive parents, who have had custody of the infant since his birth, opposed the natural mother's efforts to vacate her consent to the adoption. They contend on appeal that the Family Court's findings were against the weight of the credible evidence and that the matter should be remitted to the Family Court, Richmond County, so that a hearing may be conducted to determine the best interests of the child pursuant to Domestic Relations Law § 115-b. We find merit to this contention and, therefore, reverse the order appealed from.

In *Matter of Sarah K.* (66 NY2d 223, 233) the Court of Appeals recognized that "[a] parent's consent to the release of a child for adoption has consequence in the law, and cannot invariably be undone at will".

It has also been recognized, in this regard, that suggestions, persuasion, arguments or entreaties in favor of adoption do not constitute the "kind of force" which would sustain a finding of duress and thereby warrant the vacatur of a natural parent's consent to an adoption *(see, Matter of Podmore v Our Lady of Victory Infant Home,* 82 AD2d 48, 51). Thus, parental threats *(Batt v Nebraska Children's Home Socy.,* 185 Neb 124, 174 NW2d 88), pressure by the surrendering mother's family *(People ex rel. Drury v Catholic Home Bur.,* 34 Ill 2d 84, 213 NE2d 507), advice by the surrendering parent's physician and mother *(Matter of Giambrone,* 262 So 2d 566 [La App]), and emotional distress or depression *(Anonymous v Anonymous,* 23 Ariz App 50, 530 P2d 896; *Matter of Simaner,* 16 Ill App 2d 48, 147 NE2d 419, *affd* 15 Ill 2d 568, 155 NE2d 555; *Matter of Surrender of Minor Children,* 344 Mass 230, 181 NE2d 836) have all been cited as insufficient to overturn a

consent to the surrender of a child for adoption *(see, Matter of Podmore v Our Lady of Victory Infant Home, supra).*

With reference to the facts at bar, it is clear from the record that Nicole had misgivings about consenting to the adoption and that Nicole's mother was a primary impetus in Nicole's decision to execute the consent forms. However, although Nicole may have experienced maternal pressure to place the child up for adoption, that fact did not necessarily render the circumstances surrounding the execution of the consent coercive nor did the entreaties of her mother impair Nicole's ability to exercise free will *(see, Matter of Commissioner of Social Servs. v Sandra G.,* 141 AD2d 821). Instead, it appears that Nicole was confronted by an emotionally difficult choice and that she elected to defer to the judgment of her mother *(see, Matter of E.W.C.,* 89 Misc 2d 64).

A finding of duress is further belied by evidence in the record to the effect that Nicole was specifically advised of the options available to her, one of which included keeping the baby; by Nicole's testimony that her father supported her and never exerted any pressure upon her; and by testimony that Nicole personally contacted the mother of the putative father, who indicated a willingness to take in, care for, and support the infant as well as provide a home for the natural mother. Nicole, however, rejected this option. Her decision to proceed with the adoption, was, instead, reflective of her express desire to remain with her parents, for she was advised by her mother that she could not reside in her parent's home if she elected to keep the baby. While we are cognizant of the fact that Nicole may regret her choice, we cannot say, on this record, that the execution of the instruments surrendering the child for adoption was other than voluntary. The following quote, which is directly applicable to the facts of this case, bears reiteration: " 'Contemplation of the surrender of one's own child is in many, if not all, cases a cause of emotional and mental stress * * *. No statute has said that surrenders are valid only if executed free from emotion, tensions, and pressures caused by the situation. No principle of law requires the rule. A balance of the interests of the persons concerned and of society weighs strongly against it' " *(see, Matter of T.W.C.,* NYLJ, Dec. 18, 1974, at 17, col 6-7, *affd* 48 AD2d 893, *affd* 38 NY2d 128, quoting from *Matter of Surrender of Minor Children,* 344 Mass 230, 236, 181 NE2d 836, 839, *supra).*

We also find merit in the appellants' contention that the Family Court erred in vitiating Nicole's consent to the adoption on the ground that she did not fully understand the

significance of the forms which she was signing. As the Court of Appeals noted in *Matter of Sarah K. (supra,* at 241) "neither emotional distress nor mistake is a ground for vitiating consent under Domestic Relations Law § 115-b (4)". Nicole's assertion that she believed she was signing a consent to temporarily place the child in foster care is, in any event, against the weight of the credible evidence. Rather, the record supports the conclusion that Nicole was well aware of the nature of the documents which she signed *(see, Matter of "Female" D.,* 83 AD2d 933). The record discloses that the mechanics of the adoption process were explained to Nicole, that she understood the differences between temporary foster care placement and adoption, and that she read the first page of the extrajudicial consent form and knew that it referred to adoption. Significantly, none of the forms which Nicole signed even mention foster care. In addition thereto, we note that Nicole's claim of duress is entirely inconsistent with her assertion that she willingly signed the forms because she thought they constituted a consent for temporary foster care placement *(see, Matter of "Female" D., supra).*

Finally, we reject the Family Court's conclusion that the legal services rendered to Nicole were "patently inadequate" leaving her "without any real ability to effectively exercise her free, independent and voluntary will with respect to the surrender of her child".

In view of the foregoing, the order appealed from is reversed and the matter is remitted to the Family Court, Richmond County, so that a hearing pursuant to Domestic Relations Law § 115-b may be conducted to determine the best interests of the child. Mollen, P. J., Thompson, Brown and Eiber, JJ., concur.