In the Matter of ERIC D., an Infant. (Appeal No. 1.)— Appeal unanimously dismissed without costs. Memorandum: No appeal lies from an original order that has been superceded by an amended order (10 Carmody-Wait 2d, NY Prac § 70:28; *Gorfinkel v First Natl. Bank,* 19 AD2d 903, 904, *affd* 15 NY2d 711; *Kurtis v Allstate Ins. Co.,* 43 AD2d 954, 955; *Centino v Isbrandtsen Co.,* 13 AD2d 977, *revd on other grounds* 11 NY2d 690, *cert denied sub nom. Universal Term. & Stevedoring Corp. v Isbrandtsen Co.,* 370 US 912). (Appeal from order of Niagara County Family Court, Halpin, J.—surrender of guardianship and custody.) Present—Denman, J. P., Boomer, Pine, Balio and Davis, JJ.

In the Matter of ERIC D., an Infant. (Appeal No. 2.)— Order unanimously reversed on the law and facts without costs and respondent's application denied. Memorandum: Family Court erred in revoking the instrument by which respondent surrendered her son for adoption. The surrender had been approved by the court after respondent had received

notice and been afforded an opportunity to be heard on the validity of the surrender. Accordingly, the surrender became final and respondent could not challenge the validity of the surrender in any other proceeding *(see, People ex rel. Scarpetta v Spence-Chapin Adoption Serv.,* 28 NY2d 185, 190-191, *cert denied and appeal dismissed sub nom. DeMartino v Scarpetta,* 404 US 805;* Social Services Law § 384 [4]). Relief from that final order could be granted only upon a showing of newly discovered evidence or that the surrender was obtained by fraud, misrepresentation, or other misconduct *(see,* CPLR 5015 [a] [2], [3]).

Even if the surrender had not become final, because the child had been placed in the adoptive home, the parent who surrendered the child had no right to the custody of the child superior to that of the adoptive parents, notwithstanding that the natural parent was fit and able to maintain, support, and educate the child. The custody of the child must be awarded solely on the basis of the best interests of the child with no presumption that his interests will be promoted by any particular disposition (Social Services Law § 383 [6]).

We reject respondent's argument that the child was not deemed to have been placed in the home of adoptive parents because the fact of such placement was not recorded in a bound volume maintained by the agency *(see,* Social Services Law § 384 [5]). The requirement that certain information be recorded in a bound volume before a child shall be deemed to be placed in the home of adoptive parents applies only to subdivision (5) of Social Services Law § 384. The second paragraph of that subdivision clearly states: "For the purposes of this *subdivision,* no child" (emphasis added). Thus, the requirement does not apply to subdivision (6) of section 383.

Subdivision (6) (formerly subd [5]) of section 383 and subdivision (5) of section 384 of the Social Services Law were added by the Legislature *(see,* L 1972, ch 639) in response to the controversy created by the decision in *People ex rel. Scarpetta v Spence-Chapin Adoption Serv.* (28 NY2d 185, *supra),* which reaffirmed the right of the natural parent to the care and custody of a child superior to that of all others unless he or she had abandoned the child or was proved to be unfit *(see,* Ellison and Occhialino, *Family Law,* 24 Syracuse L Rev 513, 549-550 [1973]; Foster and Freed, *Family Law,* 25 Syracuse L Rev 401, 416-417 [1974]). Subdivision (6) of section 383 removes that superior right of the mother in an action to revoke or annul a surrender agreement where the child had been placed

in an adoptive home and requires that the determination be made solely in the best interests of the child.

Subdivision (5) of section 384 goes further and provides that where certain prerequisites have been met (a recitation in the surrender instrument that it shall become irrevocable and the recording of certain information in a bound volume) no action to revoke the surrender may be maintained after the child has been placed in an adoptive home. Thus, where a child has been placed in an adoptive home and the prerequisites of subdivision (5) of section 384 have not been met, the natural parent is not precluded from bringing a proceeding to revoke the surrender, but in accordance with subdivision (6) of section 383, the determination of the proceeding must be made "solely on the basis of the best interests of the child".

Here, the revocation of the surrender would not be in the best interests of the child. He is 3½ years old and from the time he was six months old he has lived with the husband and wife who have applied to adopt him. He has bonded with his adoptive parents and considers their children to be his siblings. It would cause him great trauma to be removed from the adoptive home.

On the other hand, the natural mother first surrendered the child for adoption when he was 5½ months old. She revoked that surrender but did not obtain custody of the child. Since the initial surrender, she visited the child only eight or nine times and has not seen him or communicated with him since November 1987 when she executed the surrender instrument she now seeks to revoke. As Justice Denman wrote in *Matter of Podmore v Our Lady of Victory Infant Home* (82 AD2d 48, 54): "The adoptive parents had the child for 18 months [here three years] during which time strong bonds of love have undoubtedly developed. To wrest [him] from them would not only be cruel, but would be in direct contravention of the policy expressed in the statute." (Appeal from order of Niagara County Family Court, Halpin, J.—surrender of guardianship and custody.) Present—Denman, J. P., Boomer, Pine, Balio and Davis, JJ.