■ In the Matter of JENELLE P., an Infant. TAMMY O. et al., Respondents; HEATHER P., Appellant. [632 NYS2d 245] —Yesawich Jr., J. Appeal from an order of the Surrogate's Court of St. Lawrence County (Rogers, S.), entered January 24, 1994, which, in a proceeding pursuant to Domestic Relations Law article VII, denied respondent's application to set aside an extrajudicial consent permitting the adoption of her child.

In December 1992, respondent approached petitioners—the sister and brother-in-law of a man with whom she had previously been romantically involved—and asked if they would consider adopting her daughter, Jenelle, who was then three years old and, in respondent's view, becoming increasingly difficult to handle. Petitioners agreed, and on January 6, 1993 the parties met with Ann LeClaire, a St. Lawrence County Probation Department family services counselor, who discussed with them the difference between guardianship and adoption, and explained the finality and permanency of adoption, and its legal consequences. That same day, petitioners filed an application for temporary guardianship, stating their intent to eventually adopt Jenelle, along with an affidavit signed by respondent, expressing her understanding of, and agreement with, the representations made in the petition.

For the next two months, Jenelle lived alternately with petitioners and a vacillating respondent—twice she took the child back, but each time decided anew that she wanted to proceed with the adoption. On March 7, 1993, after respondent had, for the third time, asked petitioners to take her daughter, this time assuring them that she would not change her mind about the adoption, petitioners asked her to sign an extrajudicial consent to the adoption. Respondent agreed, and the following day executed the consent before a notary public. Respondent also wrote and signed a note, dated March 7, 1993, proclaiming that she was "giving [her] daughter up for adoption" by petitioners and would not remove her from their home. Over the next three months, respondent took action to obviate the need for consent to the adoption by Jenelle's father, in the course of which she signed another affidavit declaring

her intention "that Jenelle be adopted by [petitioners]". She registered no objection when the court ruled, in her presence, that the adoption could proceed without the father's consent, and discussed further plans for its finalization.

On November 19, 1993, respondent moved to set aside the extrajudicial consent and deny petitioners' adoption petition. After a hearing, Surrogate's Court denied respondent's application, upheld the validity of the consent and allowed the adoption proceeding to go forward. This appeal followed.

We affirm. The bulk of the credible evidence—including the testimony of several disinterested witnesses—establishes that when respondent signed the extrajudicial consent, she wished to have petitioners adopt Jenelle, not simply to take legal custody of her temporarily, as she now contends. Moreover, it is clear that respondent was fully apprised of the consequences of signing the consent, both by the document itself, which plainly stated, as required by statute, that it was irrevocable after 45 days, and that she would thereafter have no right to seek custody of Jenelle (*see*, Domestic Relations Law § 115-b [4] [a] [ii]), and by LeClaire, who expressly told her that she would have no legal right to maintain a relationship with Jenelle after the adoption was finalized, and that any arrangements for continued contact would be based on trust alone. The record fully supports the Surrogate's conclusion that even if respondent did not read the consent form before signing it (*see*, *Matter of Sarah K.*, 66 NY2d 223, 241, *cert denied sub nom. Kosher v Stamatis*, 475 US 1108; *Matter of Baby Boy B.*, 163 AD2d 673, 674, *lv denied* 76 NY2d 710), its execution was not the product of a misunderstanding on her part as to the nature of the document, or of any misrepresentation, by petitioners or others, as to the effect of the adoption on her parental rights (*see*, *Matter of Baby Boy O.*, 191 AD2d 495; *Matter of Baby Boy B.*, *supra*, at 674).

Nor has respondent demonstrated that her signature on the consent was procured by fraud, duress or coercion (*see*, Domestic Relations Law § 115-b [7]). While respondent was undoubtedly distressed by the recent loss of her mother and the impending birth of her third child, these factors do not rise to the level necessary to vitiate her consent (*see*, *Matter of Sarah K.*, *supra*, at 241-242; *Matter of Baby Boy L.*, 144 AD2d 674, 676, *appeal dismissed* 74 NY2d 660, *lv denied* 74 NY2d 606, *cert denied sub nom. Laurence v Anonymous*, 493 US 918); it is worth noting, in this regard, that she spoke with petitioners about adopting Jenelle as early as the summer of 1992, before she became pregnant, and that she took concrete steps to that end before the tragic and sudden death of her mother.

As for respondent's claim that the consent was not properly executed, to the extent these arguments were pursued in Surrogate's Court, we agree with that court that they are belied by the documentary evidence and the testimony of disinterested witnesses, including that of the notary public before whom the consent was signed. Respondent's assertion that she was not given a copy of the consent (*see*, Domestic Relations Law § 115-b [4] [c]), not having been raised in her petition or at the hearing, when it could have been refuted by petitioners, is not properly before this Court.

Mikoll, J. P., Crew III, Casey and Peters, JJ., concur. Ordered that the order is affirmed, without costs.