■ In the Matter of the Adoption of JARRETT. KAREN DOE et al., Appellants; JILL H. et al., Respondents. (Appeal No. 1.) [638 NYS2d 385] —Amended order unanimously reversed on the

law without costs, petition reinstated and matter remitted to Niagara County Family Court for further proceedings in accordance with the following Memorandum: Family Court erred in dismissing the adoption petition and restoring custody of the child to the birth parents. The court found that the extrajudicial consent of respondent birth mother to the adoption was not knowing, voluntary, and intelligent because she had inadequate legal representation; that, in the exercise of the court's discretion, the petition should be dismissed based upon petitioners' failure to file the original consent with the petition; and that respondent birth father's consent to the adoption was required.

The evidence establishes that, when the birth mother signed the extrajudicial consent, she had determined to give up custody of the child to the adoptive parents. Her alleged confusion concerning the meaning and effect of the extrajudicial consent is insufficient to warrant its vacatur. That document set forth the consequences of signing the consent by conspicuously providing, as required by statute, that revocation within 45 days would not entitle the birth mother to the return of the child, but to a hearing to determine the child's best interests *(see, Matter of Sarah K.,* 66 NY2d 223, *cert denied sub nom. Kosher v Stamatis,* 475 US 1108; *Matter of Jenelle P.,* 220 AD2d 853).* "Neither mistake as to the meaning of the form nor failure to read the form before signing it constitutes a valid ground for vitiating the consent" *(Matter of Baby Boy B.,* 163 AD2d 673, 674, *lv denied* 76 NY2d 710). The birth mother's claims of inadequate legal representation are not supported by the "bulk of the credible evidence" *(Matter of Jenelle P., supra,* at 854) and do not warrant vacatur of the consent; the proof does not show that "the consent was signed under compulsion or threat, or against one's free will, or based upon fraudulent statements", as required for vacatur *(Matter of Sarah K., supra,* at 242; *see, Matter of Baby Boy B., supra,* at 679; *Matter of Baby Boy L.,* 144 AD2d 674, 676, *appeal dismissed* 74 NY2d 660, *lv denied* 74 NY2d 606, *cert denied sub nom. Laurence v Anonymous,* 493 US 918). We further conclude that the birth mother received adequate legal representation.

The court also erred in determining that it had the discretion to dismiss the adoption petition based upon petitioners' failure to file the original consent documents, without first conducting a best interests hearing. A photocopy of the signed consent was filed with the original petition *(see,* CPLR 2101 [e]); no provision of the Domestic Relations Law requires the filing of an original consent in an adoption proceeding. More-

over, the original consent was ultimately delivered to the court and admitted into evidence. Indeed, Domestic Relations Law § 115-b (6) (a) clearly implies that it is the execution of the consent, rather than its filing, that triggers a mandatory revocation proceeding. Domestic Relations Law § 115-b (6) (a) provides that "[a] parent may revoke his consent to adoption only by giving notice, in writing, of such revocation, no later than forty-five days after the execution of the consent * * * to the court in which the adoption proceeding has been or is to be commenced." Domestic Relations Law § 115-b (6) (d) (i) provides in mandatory language that, where the adoptive parents contest the revocation, "[t]he court shall promptly notify, in writing, the parent * * * that the court will * * * hear and determine what disposition should be made with respect to the custody of the child", based upon the best interests of the child.

Further, it is the conduct of the birth mother manifesting consent, rather than formal delivery of the consent, that controls. In *Matter of Samuel* (78 NY2d 1047, 1048-1049), the Court of Appeals held that an extrajudicial consent becomes effective upon "some overt manifestation to a third person" that the parent intends the consent to become operative, and that there is "no requirement of delivery of the consent document." Here, the birth mother overtly manifested her intent that the consent become operative by permitting petitioners to take physical custody of the child the day after he was born; the child was delivered by the hospital to petitioners at her express request. Even before the child was born, the birth mother requested that the hospital inform petitioners of his birth. Two days after the consent documents were signed, the birth mother told the birth father that she had placed the child for adoption. The birth mother delivered copies of the consent to petitioners' attorney and consented to their filing pursuant to the Interstate Compact on the Placement of Children (Social Services Law § 374-a). The birth mother further manifested her intent that the adoption should proceed by writing to petitioners on the same day that she signed the consent, expressing her happiness and gratitude that petitioners were adopting her child. Indeed, the birth mother even requested that petitioners name the child before they left the hospital, which they did. Under the circumstances, the court was required to conduct a best interests hearing when petitioners contested the birth mother's notice of revocation.

Finally, the court erred in determining that the birth father's consent to the adoption was necessary. The birth father made no effort to assert his parental interest during the criti-

cal six-month period before the placement of the child for adoption, and thus had no constitutionally protected interest in retaining custody of the child (see, Matter of Raquel Marie X., 76 NY2d 387, cert denied sub nom. Robert C. v Miguel T., 498 US 984; Matter of Raymond A. A. v Doe, 217 AD2d 757; Matter of Baby Girl, 206 AD2d 932, 933). The contention that the birth father was unable to assert his parental interest in time because he did not know that the birth mother was pregnant until after the child had been placed in petitioners' custody is unavailing. To a large extent, the failure of the birth father to know of the pregnancy was due to his own misconduct in assaulting the birth mother at the outset of her pregnancy; he thereafter was advised by an attorney to stay away from her. Moreover, although the birth mother testified that she did not tell her friends and family of her pregnancy, she acknowledged that she went out in public and did not attempt to conceal it. Of particular significance is the fact that the birth father visited with her for four or five hours approximately one week before the birth. Under the circumstances, the birth father either knew or should have known of the pregnancy; it cannot be said that there was such active concealment as would excuse the failure of the birth father to assert his parental interest in time (see, Matter of Robert O. v Russell K., 80 NY2d 254).

In light of our determination, we need not consider petitioners' contention that the child may have a constitutionally protected right to a best interests hearing. We have considered respondents' remaining arguments, including those raised by the birth mother on her cross appeal, and conclude that they are without merit.

Lastly, we reject the suggestion by the court that Family Court has the discretion not to honor an extrajudicial consent and that it may require a judicial consent in all cases. That view is supported neither by the Domestic Relations Law nor case law. (Appeal from Amended Order of Niagara County Family Court, Crapsi, J.—Adoption.) Present—Green, J. P., Fallon, Wesley, Davis and Boehm, JJ. [See, 168 Misc 2d 627.]