■ In the Matter of the Adoption of BABY U. EVAN ANONYMOUS et al., Appellants, v TERESEA U. et al., Respondents. [693 NYS2d 118] —Order, Family Court, New York County (Sheldon Rand, J.), entered on or about November 20, 1998, insofar as it directed petitioners to pay respondents' attorneys' expenses, unanimously reversed, on the law, without costs, and said direction vacated; and orders, same court and Judge, entered on or about December 30, 1998, which granted respondents' motion for an open commission to depose witnesses in Omaha, Nebraska and denied petitioners' motion to allow respondents' deposition in Omaha, Nebraska instead directing respondents'

depositions be taken in New York and granted respondents' motion to bifurcate the trial and granted respondents' motion for visitation, unanimously affirmed, without costs; order, same court and Judge, entered on or about January 15, 1999, which directed petitioners to pay respondents' expenses in connection with their deposition in New York, unanimously reversed, on the law, without costs, and the order vacated; and order, same court and Judge, entered on or about May 7, 1999 which, after a hearing, found that the extrajudicial consents executed by respondents were invalid, directed petitioners to relinquish Baby U. to respondents and declined to hold a best interests hearing, unanimously reversed, on the law, without costs, and the matter remanded for a best interests hearing before another Family Court Judge. Appeal from order, same court and Judge, entered on or about April 23, 1999, unanimously dismissed, without costs, as superseded by the appeal from the order of May 7, 1999.

Baby U. is the child of respondents Teresea U. and Paul E. who have lived together for seven years in Omaha, Nebraska and are the parents of two other children, aged 3 and 6. Teresea and Paul are unmarried and have no plans to formalize their relationship. Shortly after realizing that they would have their third child, Teresea and Paul decided to plan to surrender this child, Baby U., for adoption upon birth and they thereafter methodically searched for the most appropriate adoptive parents. During the third week of July 1998, respondents decided that petitioners should be the adoptive parents and, with the assistance of petitioners' counsel, they located and retained counsel to represent them. Baby U. was born on August 5, 1998 and the next day, in the presence of their attorney and a hospital social worker, Paul and Teresea executed an extrajudicial surrender. On August 7th, the Interstate Compact Placement Request was executed and Baby U. was approved for travel to New York on August 10th. On August 11th, the adoptive mother visited Teresea's house and was given letters which Teresea had written for Baby U. to read when an adult and in which Teresea referred to the adoptive parents as the baby's mother and father, explaining that she had to get on with her life. On August 12th, Teresea wrote a note to the adoptive parents' attorney, faxed by Paul, which requested an additional $3,000 "so that we can put this experience behind us." In separate letters one month later, Teresea and Paul notified the Family Court in New York that each was revoking their extrajudicial consents to the adoption of Baby U. Respondents requested the appointment of counsel based on an inability to pay. In a November 1998 order, the Family

Court appointed counsel for respondents and ordered that petitioners pay his fees, disbursements and all other expenses of the litigation. Subsequently, respondents moved for an order dismissing the adoption proceeding on the grounds of fraud, coercion, overreaching, duress, estoppel and ineffective assistance of counsel. In December 1998, the Family Court ordered that certain non-party depositions be held in Nebraska but that party depositions were to be held in New York; in a January 1999 order, the Family Court required petitioners to bear virtually all of respondents' costs in attending their own depositions in this State. All of the ordered discovery has been conducted. In April 1999 the Family Court heard testimony and decided that the extrajudicial consents were invalid since respondents had not been adequately represented by "independent" counsel and, because of that, had not executed the consents knowingly and intelligently.

Domestic Relations Law § 115-b authorizes execution of extrajudicial consents, the enactment of which was intended to facilitate adoption by creating certainty in the private placement adoption process (*Matter of Sarah K.*, 66 NY2d 223, 234, *cert denied sub nom. Kosher v Stamatis*, 475 US 1108). Respondents argue that while they in fact executed the consents and understood that they were agreeing to the adoption of Baby U., they nonetheless subjectively believed that they could unconditionally revoke their consents and automatically regain custody within 45 days of executing the consents. A parent's failure to understand all of the legal ramifications of such a consent does not provide a basis to void it (*Matter of Jarrett*, 224 AD2d 1029). The record is crystal clear that each parent carefully planned for the surrender, that both parents agreed after a thorough review on the fitness of the adoptive parents, that the circumstances surrounding the execution of the extrajudicial consents reflect a complete and accurate understanding of the legal consequences of what was happening, and that there was no fraud, coercion or duress whatsoever in the execution of the consents. The birth mother's claim that she did not want, as early as August 6th, to surrender Baby U. is without any objective foundation based upon her actions during the following week, including her faxed message to the adoptive parents requesting an additional payment to conclude the transaction. The birth parents were provided with competent and adequate information by their attorney, and knew that they were consenting to adoption. The record is utterly devoid of any evidence which would suggest that respondents' attorney failed to adequately explain the effect of the consent or that he had any conflict of interest.

The Family Court also improperly charged petitioners with the financial obligations for providing counsel, transportation and other expenses related to this litigation for the benefit of respondents. There is no authority to shift such litigation-related costs to petitioners (*see,* Domestic Relations Law § 115-b; Family Ct Act § 262; Judiciary Law § 35). There is also no contractual basis upon which to provide such a remedy to respondents.

With respect to the discovery orders, while Family Court was clearly in error in charging petitioners with any costs incurred by respondents, the specific disclosure which was ordered has been conducted and the manner was within the discretion of the court. Nor should the existing visitation order be disturbed pending the outcome of a best interests hearing. Baby U. did have a right to be represented in these proceedings and, on remand, a Law Guardian must provide those services as necessaries to be subsequently compensated in such manner as the Family Court may determine. Concur—Ellerin, P. J., Rosenberger, Buckley and Friedman, JJ.