■ In the Matter of BABY BOY O., an Infant. FAMILY TREE ADOPTION AGENCY, INC., Petitioner; JESSICA O., Respondent, and KENNETH Q. et al., Appellants. [733 NYS2d 768] —Spain, J. Appeal from an order of the Family Court of Saratoga County (Hall, J.), entered November 9, 2000, which dismissed petitioner's application, in a proceeding pursuant to Social Services Law § 384, for approval of an instrument transferring custody of Baby Boy O. to petitioner for the purpose of adoption.

In April 1999, respondent Jessica O. (hereinafter respondent), then an unmarried 18-year-old woman with an eleventh grade education, discovered that she was pregnant and did not know the identity of the father. At that time, respondent was involved in a residential treatment program provided by Rehabilitation and Support Services (hereinafter RSS) designed to provide housing and support for persons with diagnosed mental illnesses. Respondent had been diagnosed with depression, panic child relationship problems and borderline intellectual functioning.* Early in her pregnancy, respondent discussed her options—including, *inter alia*, adoption and keeping the child— with her RSS caseworker and decided on adoption through petitioner, an authorized agency as defined in Social Services Law § 371 (10) (a). After obtaining information on several potential adoptive families, respondent selected respondents Kenneth Q. and Pamela Q. (hereinafter the adoptive parents) to adopt the child.

Thereafter, in October 1999, while still pregnant, respondent

---

* Respondent had been prescribed psychotropic medications (mood stabilizers and antidepressants) for her condition but ceased taking them due to her pregnancy. There is no indication on this record, however, that she was suffering any adverse impacts from the absence of these medications.

expressed a desire to keep the baby but continued to meet with a representative of petitioner to discuss child care and parenting matters. On the day the child was born, December 5, 1999, respondent again expressed her desire to keep the baby. The following day, however, a child protective worker with the Saratoga County Department of Social Services (hereinafter DSS) visited respondent at the hospital and informed her that DSS was going to petition for temporary custody of the child due to its concerns that respondent was unable to properly care for him. A neglect petition was filed in Family Court the same day. Respondent thereafter spoke with her RSS caseworker, a social worker at the hospital and representatives of petitioner and executed a document surrendering custody to petitioner (*see*, Social Services Law § 384 [3]). On December 7, 1999, two days after the child's birth, respondent attended a Family Court hearing at which DSS withdrew its application for temporary custody in light of respondent's decision to place the child for adoption. Respondent was represented by an attorney at that hearing where it was noted on the record that petitioner would make a Family Court application seeking judicial approval of the surrender (*see*, Social Services Law § 384 [4]), and that respondent's capacity to execute the surrender would be addressed in the context of that proceeding.

On December 10, 1999, petitioner commenced this proceeding by applying for approval of the surrender. On January 21, 2000 respondent, through her court-appointed attorney, noted her opposition to the approval of the surrender document. Following a hearing at which respondent was represented by both her attorney and a court-appointed guardian ad litem, Family Court found that respondent was coerced into executing the surrender, denied the petition and ordered the child returned to respondent's custody. The adoptive parents now appeal.

As this case involves the guardianship and custody of a child not in foster care, the provisions of Social Services Law § 384 apply. A duly executed and acknowledged adoption surrender need not be approved by a court to be valid, but court approval will bar future challenges to the validity of the surrender (*see*, Social Services Law § 384 [4]). Once a child has been placed in an adoptive home pursuant to such a surrender for more than 30 days, the surrendering parent is likewise barred from bringing an action to revoke or annul the surrender, except in those cases where fraud, duress or coercion in the execution of the instrument is alleged (*see*, Social Services Law § 384 [5]; *Matter of Donald BB. v Liddle*, 63 AD2d 1052). Where a duly executed surrender is timely challenged within the aforesaid 30

days, "the parent or parents who surrendered such child shall have no right to the custody of such child superior to that of the adoptive parents * * *. The custody of such child shall be awarded solely on the basis of the best interests of the child, and there shall be no presumption that such interests will be promoted by any particular custodial disposition" (Social Services Law § 384 [6]).

Here, the surrender document was executed in accordance with the requirements of Social Services Law § 384 (3) and there is no suggestion of any fraudulent activity in securing respondent's consent to the adoption. Instead, respondent contends, and Family Court found, that she was under duress at the time that she executed the surrender and she was coerced into agreeing to the adoption by those present when she signed it. In our view, the record does not support Family Court's conclusion.

To void a contract on the ground of duress, a party must establish that he or she "was forced to agree to it by means of a wrongful threat which precluded the exercise of his [or her] free will * * *. In order to form an element of duress, the threat must be wrongful" (*Matter of Podmore v Our Lady of Victory Infant Home*, 82 AD2d 48, 50 [citation omitted]). Notably, "[i]n determining what constitutes 'duress' in obtaining a parent's consent to adoption of a child, the courts have not construed suggestion, persuasion, arguments or entreaties as exerting the kind of force which would constitute coercion on the consenting parent" (*id.*, at 51; *see, Matter of Baby Boy L.*, 144 AD2d 674, 675, *appeal dismissed* 74 NY2d 660, *lv denied* 74 NY2d 606, *cert denied* 493 US 918).

As such, informing a parent of an accurate, albeit unpleasant, event is not coercion. To the contrary, respondent needed to know that her child would likely be placed in foster care in order to make an informed decision. Moreover, the testimony of the DSS child protective worker and respondent's admission that she was informed regarding the steps involved in getting her child back should DSS secure temporary custody support the conclusion that respondent was counseled, rather than threatened, by the DSS caseworker. Respondent did not recall any specifics of the discussion in the hospital prior to her execution of the surrender and no other admissible record evidence is presented to show the content of that conversation except the consistent testimony of the others present who admitted informing respondent of DSS's intentions but denied advising her of any specific course to take. Thus, we find insufficient evidence on this record to support respondent's claim of

coercion and duress (see, Matter of Ashlee II., 245 AD2d 885, 886; Matter of Baby Boy L., supra, at 675-676).

Although we recognize that respondent has a diminished intellectual capacity and has required support in caring for herself, we note that, at the time of the hearing in this matter in August 2000, respondent had received a high school diploma and was married. Respondent's involvement in selecting the adoptive parents and her own expert's opinion that she understood the significance of the surrender support the conclusion that respondent's execution was knowing. Significantly, she had the support of her family—her mother and her aunt—in her decision to surrender the child. While we acknowledge that respondent was confronted with a difficult choice when informed that DSS was filing for temporary custody, it is well settled that the understandable stress and emotion involved in giving up one's child is not enough to constitute legal duress, as such pressures are inherent in the situation and will always play a part in making such a choice (see, Matter of Sarah K., 66 NY2d 223, 241, cert denied sub nom. Kosher v Stamatis, 475 US 1108; Matter of Jenelle P., 220 AD2d 853, 854; Matter of Baby Boy L., supra, at 676; Matter of Podmore v Our Lady of Victory Infant Home, supra, at 51-53).

We conclude that the surrender was knowingly and validly executed. However, although respondent never made a formal application to revoke or annul the surrender, it was clear, as early as the December 7, 1999 Family Court hearing, that respondent intended to challenge the surrender. Moreover, petitioner's December 10, 1999 petition seeking approval of the surrender instrument states that "[i]t is believed that the birthmorther will request a return of her child." Thus, we find that respondent's opposition to the approval of the surrender was equivalent to a timely proceeding to revoke the surrender under Social Services Law § 384 (5) and, accordingly, she is entitled to a best interests hearing under Social Services Law § 384 (6). We therefore remit to Family Court for such a hearing.

Crew III, J. P., Peters, Carpinello and Rose, JJ., concur. Ordered that the order is reversed, on the law, without costs, and matter remitted to the Family Court of Saratoga County for further proceedings not inconsistent with this Court's decision.