N.J.L v C.A.L (2024 NY Slip Op 50140(U))

[*1]

N.J.L v C.A.L

2024 NY Slip Op 50140(U)

Decided on February 9, 2024

Supreme Court, Nassau County

Dane, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 9, 2024
Supreme Court, Nassau County

N.J.L, Plaintiff,

against
C.A.L, II, Defendant.

Index No. xxxxxx/xxxx

Attorney for Plaintiff: Krauss Shaknes Tallentire & Messeri, LLP
Attorney for Defendant: Eugene W. Bechtle, Jr. Esq.
Attorney for the Children: Brynde Berkowitz, Esq.

Edmund M. Dane, J.

The following papers have been read on these motions and are consolidated by this Court for a single determination, sua sponte, as an exercise of discretion and in order to make "such other orders concerning proceedings therein, as may tend to avoid unnecessary costs or delay." See CPLR § 602(a). Their determination is made upon consideration and careful review of the following papers:
Defendant's Order to Show Cause dated October 25, 2023 x
Plaintiff's Notice of Cross-Motion dated January 10, 2024 x
Plaintiff's Order to Show Cause for Contempt dated December 20, 2023 x
Affirmation of Attorney for the Children dated January 8, 2024 x
Defendant's Opposition to Plaintiff's Order to Show Cause for Contempt, Opposition to Plaintiff's Notice of Cross-Motion and Reply to Defendant's Order to Show Cause dated January 22, 2024 x
INTRODUCTION
This case presents a sad and unfortunate set of facts. The important fact central to this application is not in dispute. The parties' underlying matrimonial action was commenced on December 7, 2020. After two-and-a-half years of litigation, which included twelve (12) motions, family offense petitions, the issuance of order(s) of protection, and the start of a trial, these parties resolved their matrimonial action. During the trial, the parties resolved the issues of custody and parenting time by a Stipulation which was spread on the Record in open Court on [*2]March 28, 2023 (hereinafter referred to as the "Custody Stipulation"),[FN1]
and the remaining issues were thereupon resolved by a Stipulation which was also spread on the Record in open Court on March 29, 2023 (hereinafter referred to as the "Financial Stipulation").[FN2]

During the parties' trial, however, something unfortunate occurred. These parties have three (3) children: C III, C A and CH A. The parties daughter, CH A, threatened self-harm. She expressed her pain to her parents, and told them that she did not wish to live because of the fighting between her parents. The police arrived on-scene. An ambulance was called. CH A spent the night at the hospital under evaluation. There is, of course, a presumption that natural bonds of affection lead parents to act in the best interests of their children. Troxel v. Granville, 530 U.S. 57, 87 (2000) (Stevens, J., dissenting). The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. Tatel v. Mt. Lebanon Sch. Dist., 637 F. Supp. 3d 295 (D. Penn. 2022). A parent's love for a child can be described as a cohesive bond which serves to anchor the material, financial and emotional support that are vital to the well-being of that child. M.H.B. v. H.T.B., 100 N.J. 567 (Supreme Court of New Jersey 1985). There can be no doubt that CH A's threat of self-harm took an emotional toll on these parties.
Now, months later, the Defendant seeks to set aside the Custody Stipulation and the Financial Stipulation, based upon duress and, in effect, unconscionability. The principal issue of this application is a sensitive one, and it is whether or not a child's threat of self-harm and her subsequent hospitalization for that threat constitutes duress and is a sufficient basis to vitiate two (2) Stipulations (see supra) on that basis. This Court finds, for the reasons that follow in this Decision and Order, that the child's threat of self-harm and subsequent hospitalization for same does not constitute duress.
PRELIMINARY STATEMENT
The Defendant moves by Order to Show Cause dated October 25, 2023 (Motion Sequence No.: 016), seeking an Order: (1) Vacating the terms and provisions of the Stipulation of Settlement dictated in open court on March 28, 2023 and the Stipulation of Settlement dictated in open court on March 29, 2023 on the grounds that the terms and provisions of said Stipulations were both the product of duress and are manifestly unfair; (2) Staying the within proceedings including but not limited to the entry of a proposed Judgment of Divorce pending determination of the within motion; (3) Granting defendant, C.A.L., II, full residential custody of the child, CH A, born XX XX, 2012; (4) Granting defendant such other and further relief as to this Court may seem just, proper and equitable.
The Plaintiff cross-moves by Notice of Cross-Motion dated January 10, 2024 (Motion Sequence No.: 108) seeking an Order: (1) Sanctioning Defendant pursuant to Pursuant to [sic] 22 NYCRR 130-1.1 by granting Krauss Shaknes Tallentire & Messeri LLP the reasonable costs and attorney's fees incurred by Plaintiff in opposing Defendant's frivolous Order to Show Cause; and (2) Directing such other and further relief as the Court deem just and proper.
The Plaintiff moves by Order to Show Cause for Contempt dated December 20, 2023 (Motion Sequence No.: 017) seeking an Order:(a) Pursuant to Judiciary Law 750(A)(3) and 753(A)(3), adjudging Defendant, C.A.L., II ("Defendant"), to be in criminal and civil contempt of court for failure to pay the school tuition for the parties three Children in violations [sic] of the so-Order Stipulations of Settlement dated March 28, 2023 ("March 28th Stipulation" Exhibit B) May 29, 2023 (March 29th [sic] Stipulation Exhibit C); (b) Pursuant to Judiciary Law 750(A)(3) and 753(A)(3), adjudging Defendant, C.A.L., II ("Defendant"), to be in criminal and civil contempt of court for failure to pay child support based on his refusal to reimburse the Plaintiff for his share of the Children's add on expenses in violations [sic] of the March 28th Stipulation and March 29th Stipulation; (c) Directing Defendant to immediately pay of [sic] the sum of $13,691.44 to the Rectory School for his share of CH A's tuition through the end of the 2023-2024 school year, $8,874 to Hebron Academy for his share of C A's tuition through the end of the 2023-2024 school year, and $9,422.67 to the Hyde School for his share of C III's tuition through the end of the 2023-2024 school year; (d) Directing Defendant to immediately reimburse Plaintiff the amount of $4,140 for his share of the Children's tutoring expenses, $4,325 for his share of the children's 2023 summer camp costs, $2,619.73 for his share of the Children's extracurricular activity expenses, and $5,012.56 for his share of the Children's unreimbursed medical expenses; (e) Pursuant to Domestic Relations Law 237(b) and 238 and/or Judiciary Law 773 awarding Plaintiff the sum of $20,000 in counsel fees for the costs and fees incurred as a result of having to bring this application due to Defendant's failure to comply with this Court's orders; and (f) For such other and further relief as the Court may deem necessary.
BACKGROUND
These parties were married on August 17, 2007. There are three (3) children of this marriage: C III, born XX XX, 2008, C A, born XX XX, 2010 and CH A, born XX XX, 2012. The parties' matrimonial action was commenced on December 7, 2020 by the filing of a Summons with Notice and Verified Complaint with the Nassau County Clerk's Office. During the underlying matrimonial action, the Plaintiff was represented by the firm of Krauss Shaknes Tallentire & Messeri, LLP. The Defendant was represented by The Maiaklovsky Law Firm, PLLC. By Order Appointing Attorney for the Children dated January 21, 2021, this Court appointed Brynde Berkowitz, Esq. (hereinafter referred to as the "AFC"), to represent the subject children.
The parties' underlying matrimonial action proceeded to trial. The parties settled this matter during trial, and spread on the record in open Court the Custody Stipulation on March 28, 2023 and the Financial Stipulation on March 29, 2023.[FN3]
On March 29, 2023, this Court issued an Order Directing Submission of Findings of Fact, Conclusions of Law, and Judgment of Divorce (hereinafter referred to as the "Judgment Submission Order"). The contested-settled judgment packet was submitted to the Clerk's Office through NYSCEF on June 29, 2023. To date, the proposed Judgment of Divorce remains unsigned.
On September 11, 2023, the Defendant executed a Consent to Change Attorney form, substituting Eugene W. Bechtle, Jr. Esq., in place and stead of the Maiaklovsky Law Firm, [*3]PLLC. On the presentment date of the Defendant's Order to Show Cause, this Court denied the proposed preliminary relief sought by the Defendant which was for a stay of all proceedings including a stay of entry of the proposed Judgment of Divorce.
On the presentment date of the Plaintiff's Order to Show Cause for Contempt, the Court (Hon. Stacy D. Bennett, J.S.C.),[FN4]
granted the following interim relief:
ORDERED, that, pending determination of this motion, within 48 hours, Defendant shall pay the sums of $9,800.00 to the Rectory School for his share of CH A's tuition through the end of the 2023-2024 school year, $6,655.00 to Hebron Academy for his share of C A's tuition through the end of the 2023-2024 school year, and $2,770.00 for the Hyde School for his share of C III's tuition through the end of the 2023-2024 school year.
THE PARTIES' CONTENTIONS
Defendant's Contentions (Motion Sequence No.: 016):
The Defendant argues that the impetus for his participation and verbal consent to the Stipulation(s) was extreme duress and that the terms of both of the aforesaid are manifestly unfair. He argues that the Plaintiff has accused him of abusing the children and that his interaction with the children was interfered with by the Plaintiff. He argues that the Plaintiff has made five (5) complaints to CPS, all of which were determined to be unfounded.[FN5]
He argues that during the matrimonial action, there was extreme anxiety imposed upon the children, and that the Plaintiff employed one of the parties' sons to falsely accuse him of abuse. He argues that CH A is "daddy's little girl" who suffered the most during the divorce as she is the most "vulnerable". He argues that his counsel during the divorce case was too "passive" in representing his interests, but he concedes that he was "becoming desperate to resolve this case". He argues that in March, 2023, CH A's health was seriously declining and that she would cry to him to bring an end to the divorce case. He sets forth that on March 27, 2023, CH A threatened suicide and that because of this, in effect, he had to get the case "over", as he needed to bring peace and stability to CH A's life. He therefore argues that, in light of this and in effect, he "went along with whatever was dictated on the Record the next day and the day after" and that he was only "half listening". He argues that, on October 9, 2023, CH A called him from her boarding school and told him that she was so upset that she was going to commit suicide and that she had cut herself. He argues that he should have never consented to give-up custody of CH A. He sets forth that his gross salary is $128,892.64, but his monthly expenses are $27,908, including sharing the cost of boarding school for all three children, his share of which totals $31,266.00. He argues that he also has to share the cost of summer camp, with his share totaling $4,325.00.
Plaintiff's Contentions (Motion Sequence No: 017):
The Plaintiff argues that when she commenced the underlying matrimonial action, the Defendant consistently failed to pay child support and he refused to pay the children's add-on [*4]expenses. She argues that the children have been attending private independent schools since before the divorce action and, in effect, the Defendant changed his position about private school when the divorce action was commenced. She argues that the Defendant has failed to pay his portion of the children's tuition and failed to reimburse her for over $20,000 in add-on expenses. She argues that she sought the Defendant's payment of the children's tuition, but the children's schools are threatening to expel them for the Spring 2024 semester. She argues that the Defendant is in arrears $31,988.11 for school tuition, $495 for school application fees, $4,140 for tutoring expenses, $4,325 for summer camp expenses, $2,619.73 for extracurricular activity expenses, and $5,012.56 for medical co-payment expenses.
Affirmation of Attorney for the Children (Motion Sequence Nos.: 016 & 017):
The AFC sets forth that she contacted two of the children's schools in December, 2023, and confirmed that the Defendant had not paid his share of tuition. The AFC sets forth that she met with the children on December 27, 2023, and the children advised her that each of them are "thriving" at their current boarding schools and that they each would like to remain there. The AFC sets forth that each school, however, advised her that the children would not be allowed back after the Christmas holiday unless each school received the tuition due. The AFC reiterates that the children each wish to continue attending their respective schools and that it is in the best interests of the children that the Defendant pay his share of the tuition that is due. The AFC sets forth that the parties were engaged in an acrimonious litigation during the underlying divorce and waged war against each other and sought police intervention in front of the children. The AFC sets forth that the underlying divorce was resolved in the best interests of the children. The AFC sets forth that the Plaintiff filed a Family Offense Petition was settled on consent with no admission and a final Order of Protection.[FN6]
The AFC sets forth that C III wants everything to remain as status quo and that he does not wish to have contact with the Defendant, that C A would like to speak with the Defendant on the phone, and that CH A wishes to maintain the status quo. She sets forth that CH A, while she was previously unhappy at her Boarding School (which included an incident of self-harm), she has adjusted and is happy now and that when CH A is home from Boarding School, she wishes to continue to live with the Plaintiff and visit with the Defendant, as she enjoys the current schedule. The AFC sets forth that CH A has, in the past, witnessed the Defendant engage in "extreme" corporal punishment" by the Defendant upon her brothers.
Plaintiff's Contentions & Opposition (Motion Sequence Nos.: 016 & 018):
The Plaintiff reiterates that the Defendant is in arrears with respect to many of his court-ordered obligations. She argues that she accepted less than the statutorily amount for child support and less than her equitable share of the Defendant's pension at Vanguard. She argues that the Defendant agreed to equally cover the costs of private schooling and the Defendant knew that the only educational options were private boarding schools. She argues that the Defendant continues to allocate funds for litigation instead of complying with the Stipulation(s). She argues [*5]that there has been no change in circumstances as it relates to CH A and that it is in the best interests of CH A to remain in her care. She argues that the Defendant has a short temper and that this resulted in the two boys refusing visitation with him. She argues that the Defendant physically assaulted C A. She argues that C A recorded the Defendant threatening and abusing C A and making comments about his sexuality, and that CH A was present during this "episode".
Defendant's Opposition, Opposition & Reply (Motion Sequence Nos.: 016, 017 & 018):
The Defendant argues that the TRO's issued by Justice Bennett have been satisfied as he put together the $19,280.33 ordered by borrowing the maximum from his 401(k), borrowing from a friend, and his year-end bonus. He argues that three lawyers (the Plaintiff, the Plaintiff's counsel and the AFC) out-maneuvered and "bulldozed" his lawyer who was "not capable of standing up for me". He argues that the Stipulation(s) are one-sided. He argues that he is unable to comply with the Stipulation(s), as he has $27,908.00 in monthly expenses which leaves him with a monthly deficit of $6,973.07. He avers that his monthly income, after deductions, is $3,152.76. He argues that he cannot pay his prior attorney and cannot pay his student loans. He argues that over his objection, the Plaintiff placed the children in out-of-state boarding schools, and he never consented to those placements. He argues that he cannot be held in contempt for decisions made over his objections and that the Plaintiff denigrates his role as the father of the children. He argues that the AFC's contentions that the children are enjoying their current schools is "besides the point" as the children were manipulated during the divorce. He argues that the Stipulation(s) are deficient in that it is unusual for the children to be shipped-off to Boarding School and sleep-away camps, and that provisions for the payment of private school prior to college are unusual. He argues that "caps" should have been placed in the Stipulation(s).
DISCUSSION + ANALYSIS
VACATUR OF CUSTODY & FINANCIAL STIPULATION
Stipulations of settlement are favored by the courts and are not lightly set aside. Sabowitz v. Sabowitz, 123 AD3d 794 (2d Dept. 2014); see also Campione v. Alberti, 98 AD3d 706 (2d Dept. 2012).[FN7]
Judicial review is to be exercised sparingly, with a goal of encouraging parties to settle their differences on their own. Doukas v. Doukas, 47 AD3d 753 (2d Dept. 2008); see also Brennan-Duffy v. Duffy, 22 AD3d 699 (2d Dept. 2005); see also Kojovic v. Goldman, 35 AD3d 65 (1st Dept. 2006) (a stipulation of settlement in a divorce action, competently entered into, is entitled to the recognition accorded any other contract, and judicial review is to be exercised circumspectly, sparingly and with a persisting view to the encouragement of parties settling their own differences in connection with the negotiation of property settlement provisions). Courts have thrown their cloak of protection over separation agreements and made it their business, when confronted, to see to it that they are arrived at fairly and equitably, in a manner so as to be free from the taint of fraud and duress, and to set aside or refuse to enforce those born of and subsisting in inequity. Jon v. Jon, 123 AD3d 979 (2d Dept. 2014).
A separation agreement or stipulation of settlement which is fair on its face will be enforced according to its terms unless there is proof of fraud, duress, overreaching, or unconscionability. However, because of the fiduciary relationship existing between spouses, a [*6]marital agreement should be closely scrutinized and may be set aside upon a showing that it is unconscionable or the result of fraud or where it is shown to be manifestly unjust because of the other spouse's overreaching. Eichholz v. Panzer-Eichholz, 188 AD3d 820 (2d Dept. 2020). When there has been full disclosure between the parties, not only of all relevant facts but also of their contextual significance, and there has been an absence of inequitable conduct or other infirmity which might vitiate the execution of the agreement, courts should not intrude so as to redesign the bargain arrived at by the parties on the ground that judicial wisdom in retrospect would view one or more of the specific provisions as improvident or one-sided. Mizrahi v. Mizrahi, 171 AD3d 1161 (2d Dept. 2019). Indeed, there is a long-standing public policy in favor of settlements in divorce action. Keller-Goldman v. Goldman, 149 AD3d 422 (1st Dept. 2017) (Andrias, J., dissenting).
Duress
A contract is voidable on the ground of duress when it is established that the party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of his or her free will. Heinemann v. Heinemann, 189 AD3d 1553 (2d Dept. 2020); see also Shah v. Mitra, 171 AD3d 971 (2d Dept. 2019); see also Forman v. Forman, 211 AD3d 698 (2d Dept. 2022). Generally, the aggrieved party must demonstrate that threats of an unlawful act compelled his or her performance of an act which he or she had the legal right to abstain from performing. Polito v. Polito, 121 AD2d 614 (2d Dept. 1986). The threat must be such as to deprive the party of the exercise of free will. Cavalli v. Cavalli, 226 AD2d 666 (2d Dept. 1996). In order to form an element of duress, the threat must be wrongful. Podmore v. Our Lady of Victory Infant Home, 82 AD2d 48 (4th Dept. 1981). A crucial element of duress is lack of free choice. Podmore, 82 AD2d at 51. A threat to do that which one has the legal right to do does not constitute duress (see Bachorik v. Allied Control Co., 34 AD2d 940 (1st Dept. 1970)), and generalized contentions that a party felt pressured are insufficient (see Desantis v. Ariens Co., 17 AD3d 311 (2d Dept. 2005)).
As a guidepost, and aside from established case-law, the Court looks to secondary authority, such as the Restatement of Contracts. The Restatement (Second) of Contracts § 175, entitled When Duress by Threat Makes a Contract Voidable, provides:
(1) If a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim.
(2) If a party's manifestation of assent is induced by one who is not a party to the transaction, the contract is voidable by the victim unless the other party to the transaction in good faith and without reason to know of the duress either gives value or relies materially on the transaction.
(emphasis added).
But what constitutes an improper threat? The Restatement (Second) of Contracts § 176, entitled When a Threat Is Improper, provides:
(1) A threat is improper if
(a) what is threatened is a crime or a tort, or the threat itself would be a crime or a tort if it resulted in obtaining property,
(b) what is threatened is a criminal prosecution,
(c) what is threatened is the use of civil process and the threat is made in bad faith, or
(d) the threat is a breach of the duty of good faith and fair dealing under a contract with the recipient.
(2) A threat is improper if the resulting exchange is not on fair terms, and
(a) the threatened act would harm the recipient and would not significantly benefit the party making the threat,
(b) the effectiveness of the threat in inducing the manifestation of assent is significantly increased by prior unfair dealing by the party making the threat, or
(c) what is threatened is otherwise a use of power for illegitimate ends.
The genesis of the Defendant of duress is that, in effect, he was forced to agree to the terms of the Stipulation(s) because CH A threatened self-harm. The Defendant's application founders. CH A's threat of self-harm is not an improper threat made by the other party (see Restatement (Second) of Contracts § 175(1)). CH A, the parties' child, is not the other party. In this vein, the Defendant has not established that his manifestation of assent to enter into the Stipulation(s)was induced by a wrongful threat made by the Plaintiff. In fact, the Defendant has not even alleged that the Plaintiff threatened him in a wrongful way so as to induce his assent to the Stipulation(s) (see Restatement (Second) of Contracts § 175(1)). To this point, the Defendant has not alleged that the Plaintiff threatened a crime or a tort, nor has he alleged that the Plaintiff threatened the Defendant's criminal prosecution if he did not consent to the Stipulation(s) (see Restatement (Second) of Contracts § 176(1)(b)). Additionally, the Defendant has not alleged that what was threatened and what forced him to enter into the Stipulation(s) was the use of civil process in bad faith (see Restatement (Second) of Contracts § 176(1)(c)), or that the Plaintiff breached the duty of good faith and fair dealing (see Restatement (Second) of Contracts § 176(1)(d)). The Court does not find that the Defendant's manifestation of assent to enter into the Stipulation(s) was induced by one who is not a party to the transaction, namely, CH A (see Restatement (Second) of Contracts § 175(2)) as the Defendant himself acknowledged on the Record, under oath, that he was entering into the Stipulation(s) freely and voluntarily.[FN8]

There is nothing in this Record that alleges and/or demonstrates that the Plaintiff engaged in an unlawful act which compelled the Defendant's performance of an act that he had a legal right to abstain from. Namely, the allegations of duress propounded by the Defendant centers around CH A's mental state during the parties' matrimonial action. But what the Defendant fails to do is provide this Court with a sufficient nexus as to how CH A's mental state effectively forced him and left him with no other choice but to enter into the Stipulation(s). CH A's mental state did not deprive the Defendant of his free will not to agree to the terms of the Stipulation(s).
Additionally, the Court does not find that the Defendant was not without a reasonable alternative (see Restatement (Second) of Contracts § 175(1)), as the Defendant could have elected to continue with the ongoing trial of the matrimonial matter, which the Court does not find to be an unreasonable alternative. Moreover, the Court finds that the Defendant had another alternative: seek or request an adjournment of the underlying matrimonial trial in light of the child's threat of self-harm. The Defendant, in fact, concedes that "...I never should have [*7]consented to give up custody of CH A..." (see C.A.L., II, Affidavit ¶ 12), which the Court finds to be an acknowledgment that the Defendant had a reasonable alternative: to continue with the trial and pursue custody of CH A.
The Court has another consideration: the Stipulation(s) speak for themselves. The relevant portions of the Custody Stipulation read:
THE COURT: Okay, thank you.
Ms. L's and Mr. L's, did you hear the stipulation read into the record?
MR. L: Yes.
MS. L: Yes, your Honor.
THE COURT: Did you both understand it?
MR. L: Yes.
MS. L: Yes, your Honor.
THE COURT: Do you both agree to be bound by the Stipulation that was read into the record?
MS. L: Yes, your Honor.
MR. L: Yes.
THE COURT: Are you both entering into this agreement freely and voluntarily?
MS. L: Yes, your Honor.
MR. L: Yes.
* * *
THE COURT: Do you understand that if you did not come into this agreement on custody and parenting time you had the right to continue the trial with regard to those matters?
MS. L: Yes, your Honor.
MR. L: Yes.
(see Custody Stipulation, pages 10-11) (emphasis added).
The relevant portions of the Financial Stipulation provide:
THE COURT: So Ms. L, Mr. L, the same questions as yesterday. Did you both hear the stipulation read into the record?
MS. L: Yes, your Honor.
MR. L: Yes.
THE COURT: Did you both understand it?
MR. L: Yes.
MS. L: Yes, your Honor.
THE COURT: Do you both agree to it?
MS. L: Yes, your Honor.
MR. L: Yes.
THE COURT: Are you both entering into this agreement freely and voluntarily?
MS. L: Yes, your Honor.
MR. L: Yes.
* * *
THE COURT: Do you understand that you had the right to proceed to trial —
MS. L: Yes, your Honor.
MR. L: Yes.
THE COURT: —over these issues?
MS. L: Yes, your Honor.
MR. L: Yes.
Here, both Stipulation(s) contain express acknowledgments - by the Defendant himself - that they were entered into freely and voluntarily. See generally Sabowitz v. Sabowitz, 123 AD3d 794 (2d Dept. 2014) (party not entitled to set aside stipulation where, among other things, stipulation contained an express representation that it was not a product of fraud or duress); see also Schultz v. Schultz, 58 AD3d 616 (2d Dept. 2009) (application for summary judgment seeking declaration that postnuptial agreement is unenforceable denied where, among other things, agreement itself recites that the party entered into it freely and voluntarily). In the instant action, those express acknowledgments - in two separate stipulations - deflate the Defendant's claim that the Stipulation(s) were the product of duress and that he had no choice but to enter into those agreements.[FN9]

Accordingly, and for all of the aforesaid reasons, it is hereby:
ORDERED, that so much of Branch (1) of the Defendant's Order to Show Cause dated October 25, 2023 which seeks to set aside the Custody Stipulation and the Financial Stipulation on the ground of duress be and the same is hereby DENIED.
Manifestly Unfair/Unconscionability
The Defendant avers that both Stipulation(s) are "manifestly unfair", which the Court understands to be arguments asserting unconscionability. A party seeking to vacate a stipulation of settlement has the burden of proof. See generally Johnson v. Ranger, 216 AD3d 925 (2d Dept. 2023). A stipulation which is fair on its face will be enforced according to its terms unless there is proof of fraud, duress, overreaching, or unconscionability. Rubin v. Rubin, 33 AD3d. 983 (2d Dept. 2006); see also Lazar v. Lazar, 88 AD3d 852 (2d Dept. 2011). A stipulation, however, will not be vacated simply because a party, after the fact, believes that the agreement was improvident in some respect or that it constituted a bad bargain (see Cohen v. Cohen, 170 AD3d 948 (2d Dept. 2023)), and a stipulation of settlement is not unconscionable simply because it might have been improvident or one-sided (see O'Hanlon v. O'Hanlon, 114 AD3d 915 (2d Dept. 2014)). The determination of unconscionability is a matter of law for the court to decide. See generally Industralease Automated & Scientific Equipment Corp. v. R.M.E. Enterprises, Inc., 58 AD2d 482 (2d Dept. 1977). In determining the conscionability of a contract, no set weight is to be given any one factor; each case must be decided on its own facts. David v. #1 Mktg. Serv., Inc., 113 AD3d 810 (2d Dept. 2014).
As the Court of Appeals has written:
It is well settled that an unconscionable contract is generally defined as one which is so grossly unreasonable as to be [unenforceable according to its literal terms] because of an absence of meaningful choice on the part of one of the parties [procedural [*8]unconscionability] together with contract terms which are unreasonably favorable to the other party [substantive unconscionability].
Lawrence v. Miller, 11 NY3d 588 (2008); see also Cilento v. Cilento, 186 AD3d 556 (2d Dept. 2020 (in order to find a marital contract unconscionable, two elements must be shown: procedural unconscionability, which requires a lack of meaningful choice on the part of one of the parties, and substantive unconscionability, which requires contract terms which are unreasonably favorable to the other party). An unconscionable bargain is one which no person in his or her senses and not under delusion would make on the one hand, and no honest and fair person would accept on the other, the inequality being so strong and manifest as to shock the conscience and confound the judgment of any person of common sense. Hughes v. Hughes, 131 AD3d 1207 (2d Dept. 2015). Procedural and substantive unconscionability operate on a sliding scale. Simar Holding Corp. v. GSC, 87 AD3d 688 (2d Dept. 2011).
In defining, in part, what makes a contract unconscionable, the Court of Appeals has opined:
[A]n unconscionable bargain has been regarded as one such as no person in his or her senses and not under delusion would make on the one hand, and as no honest and fair person would accept on the other, the inequality being so strong and manifest as to shock the conscience and confound the judgment of any person of common sense.
Christian v. Christian, 42 NY2d 63 (1977); see also Shah v. Mitra, 171 AD3d 971 (2d Dept. 2019). A reviewing court examining a challenge to an agreement will view the agreement in its entirety and under the totality of the circumstances. Mizrahi v. Mizrahi, 171 AD3d 1161 (2d Dept. 2019).
A. The Financial Stipulation
i. Procedural Unconscionability
The procedural element of unconscionability requires an examination of the contract formation process. Gillman v. Chase Manhattan Bank, 73 NY2d 1 (1988). Evidence of procedural unconscionability may include high-pressure tactics or a lack of meaningful choice. Green v. 119 W. 138th St. LLC, 142 AD3d 805 (1st Dept. 2016) (Tom, J., dissenting). Such evidence may also include whether deceptive tactics were used and whether or not there was a disparity in bargaining power. Gillman, 73 NY2d at 10. Additionally, the Court can consider an imbalance in the understanding and acumen of the parties. Emigrant Mtge. Co., Inc., v. Fitzpatrick, 95 AD3d 1169 (2d Dept. 2012).
While the Defendant claims that "...I found myself struggling to survive in a process where 3 attorneys (my wife, my wife's attorney, and the attorney for the children) essentially outmaneuvered and bulldozed my attorney who was clearly not capable for standing up for me..." (see C.A.L., II, Reply Affidavit ¶ 4), the Defendant fails to provide this Court, other than that generalized and conclusory claim, any specifics are to what "high pressure" tactics were employed.[FN10]
In fact, his principal moving Affidavit effectively contradicts that nonspecific claim, [*9]wherein he admits that "...[t]he possibility that CH A, at her age, would be in so much pain that she would contemplate taking her own life was overwhelming to me and I felt that as a parent I had absolutely no choice but to do whatever I could to bring contentious litigation to an end and try to bring some peace and stability to my younger daughter..." (see C.A.L., II, Affidavit ¶ 9). In other words, the Defendant allegedly agreed to resolve the case because of what was transpiring with CH A, not because of any specific high pressure tactics employed by the Plaintiff. Moreover, the Court does not find the absence of any meaningful choice; the Defendant could have proceeded with the ongoing trial, sought an adjournment of the trial in light of CH A's threat of self-harm, or attempted to negotiate different terms of the Financial Stipulation.
The Defendant likewise does not allege that the Plaintiff engaged in any deceptive tactics in order to induce him into agreeing to the terms of the Financial Stipulation. The Court, on this Record, does not find a disparity in the bargaining-power of the parties; the Court notes that both parties were represented by counsel, and if the Defendant felt as if his attorney was not effectively advocating for him or being bulldozed, he could have done exactly what he did right before he filed this motion: executed a consent to change attorney form and retained a different attorney. There is likewise insufficient evidence that there was an imbalance in the understanding and acumen of the parties, as both parties acknowledged, on the Record, that they understood the terms of the Financial Stipulation.
ii. Substantive Unconscionability
The substantive element of unconscionability requires, in sum and substance, a showing that one or more of the key terms of the contract that are unreasonably favorable to the other party. See generally Long Is. Minimally Invasive Surgery, P.C. v. Outsource Mktg. Solutions, Inc., 33 Misc 3d 1228(A) (Supreme Court Nassau County 2011). Substantive elements of unconscionability appear in the content of the contract per se. See generally Wells Fargo Bank, N.A. v. Weekes, 46 Misc 3d 1205(A) (Supreme Court Kings County 2014).
The Court has examined whether or not the terms of the Financial Stipulation are unreasonably favorable to the Plaintiff by reading the Financial Stipulation in toto. The Court does not find that they are. First, the Court notes that the presumptive amount of child support for the three (3) children is $2,132.95 per month (see Financial Stipulation, page 10), and the Plaintiff agreed to accept a downward deviation of the presumptive amount of child support in the amount of $1,700.00 per month (see Financial Stipulation, pages 3-4), a more than $400.00 per month reduction in said obligation. That inures to the benefit of the Defendant. Second, the Court notes that the Financial Stipulation acknowledges that the Plaintiff's adjusted gross income for CSSA purposes is $97,819.48 and the Defendant's adjusted gross income for CSSA purposes is $115,514.48, making the combined parental income to be $213,333.76 (see Financial Stipulation, pages 9-10), with the Plaintiff's pro rata share of the CPI being 46% and the Defendant's pro rata share of the CPI being 54% (see Financial Stipulation, page 10). The Court notes that the parties agreed that instead of allocating the add-one expenses of the children on a pro rata basis, the parties agreed to equally share the cost of agreed-upon extracurricular activities, unreimbursed medical, dental, orthodontia and optical expenses, and the educational [*10]expenses, such as private school tuition, applications and tutoring, notwithstanding that the Defendant has a greater share of the combined parental income. That insures to the benefit of the Defendant.
Third, the Court notes that the Plaintiff waived her right to reimbursement of add-on expenses of the children paid by her retroactive to the date of commencement of the action, except for the costs of C III's braces and the children's therapy expenses (see Financial Stipulation, page 5). That is a benefit to the Defendant. Fourth, the Court notes that the parties combined parental income is $213,333.76 (see supra), and the downward deviation agreed-to was calculated only on the first $163,000.00 of combined parental income (see Financial Stipulation, page 9) and not the total combined parental income in excess of the statutory cap, which would have made the Defendant's basic child support obligation higher. That inures to the benefit of the Defendant. 
Fifth, the Court notes that the Financial Stipulation provides, in sum and substance, that the Plaintiff would retain the property located at XXXXX, Hempstead, New York and the Defendant would retain the property located at YYYYY, Hempstead, New York (see Financial Stipulation, page 11). In effect, the Court finds that the parties agreed that each of them would retain one parcel of property. The Court does not find this agreed-upon equitable distribution of real property to be manifestly unfair or so as to shock the conscience of the Court. Both parties, in effect, received an equal benefit of the retention of one parcel of real estate. Sixth, the Court notes that the parties agreed that the Plaintiff would only receive forty (40%) percent (and not fifty (50%) percent or some other percentage over forty (40%) percent) of the Defendant's 401(k) at Vanguard. That inures to the benefit of the Defendant.
Seventh, the Court finds that the agreed-upon life insurance policy of $225,000 to secure his child support obligation (see Financial Stipulation, page 14) to be in-line with the remaining amount of his child support obligation until the emancipation of the youngest child.[FN11]
In fact, the $225,000.00 face amount of his life insurance policy sufficiently covers only his basic child support obligation extrapolated over the remaining years until the youngest child emancipates, and provides, in effect, no financial security for the Defendant's fifty (50%) percent share of his obligation to the add-on expenses of the children. That inures to the benefit of the Defendant inasmuch as a policy with a higher face value may have increased the cost of the policy premium. Eighth, it appears that the parties agreed to each be responsible for 100% of the debt in his or her respective names (see Financial Stipulation, page 15). Inasmuch as no detail was set forth in the Financial Stipulation as to the amount of the debt each party was retaining, the Court sees nothing improvident or manifestly unfair about the allocation of the debt.
Ninth, it also appears that the parties agreed to remove their personal property from the other's residence (see Financial Stipulation, page 15). Inasmuch as the parties did not specifically allocate the actual personalty that each was retaining, or the value thereof, the Court sees nothing manifestly unfair about that agreement. Tenth, each party agreed to pay his or her own counsel fees (see Financial Stipulation, page 16). The Court finds nothing manifestly unfair about each party paying his or her own counsel fees in light of the substantial comparability of the parties' [*11]respective incomes (see supra).
As a final point, the Defendant acknowledges that "...[m]y financial circumstances are essentially what they were in March 2023..." (see C.A.L., II, Affidavit ¶ 13). The Court has not found that any of the provisions of the Financial Stipulation to be so one-sided or manifestly unfair. The fact that there may not be any "caps" in the Financial Stipulation with respect to certain add-on expenses, as argued by the Defendant, is unpersuasive. Parties to a contract are basically free to make whatever agreement they wish. See generally Deutsche Bank Natl. Trust Co. V. Flagstar Capital Mkts., 32 NY3d 139 (2018). The Defendant has not provided this Court with any statutory authority, established case-law, and/or any persuasive authority that mandates a "cap" on educational expenses. The failure to place a "cap" in the Financial Stipulation is not a violative of any law, nor is it a transgression of public policy. Likewise, the fact that the parties agreed to pay for private school (not college) is not a basis to vitiate the Stipulation, especially since the Defendant does not deny that the children were historically, even before the divorce, attending private school. The Defendant's argument that the children should be in public school instead of private school is not a basis to vitiate the Financial Stipulation. In this respect, if the Defendant is alleging that the Plaintiff violated the Custody Stipulation, then he has remedies; but vitiation of the Financial Stipulation is not one of them.
B. The Custody Stipulation
i. Procedural Unconscionability
The Court does not find any evidence of high-pressure tactics employed by either the AFC or the Plaintiff. Both parties were represented by independent counsel of their own choosing, and the Defendant acknowledged, on the Record, that he was agreeing to the terms of the Custody Stipulation "freely and voluntarily". Likewise, the Court does not find that the Defendant had a lack of meaningful choice before agreeing to the terms of the Custody Stipulation inasmuch as he could have proceeded with the ongoing trial or sought an adjournment of same in light of CH A's threat of self-harm. Or, alternatively, the Defendant could have sought an adjournment of the trial.[FN12]
In other words, the Defendant was not forced by the Plaintiff to agree to the terms of the Custody Stipulation, and he had other options; he voluntarily chose not to exercise those other options. Furthermore, there was no "disparity" in the bargaining power of the parties inasmuch as both parties were represented by independent counsel of their own choosing, and the Defendant himself acknowledged that he was satisfied with the services of his counsel. Lastly, the Court does not find any imbalance in the understanding and acumen of the parties, as the Defendant expressly acknowledged, on the Record, that they understood the terms of the Custody Stipulation.
ii. Substantive Unconscionability [FN13]

First, while the Custody Stipulation confers residential custody of the children to the Plaintiff, it confers joint legal custody upon the parties (see Custody Stipulation, page 3). The [*12]Court does not find that one parent being designated as the residential parent of the children to be a term that is manifestly unfair to one party. Second, with respect to medical decision-making, in sum and substance, the parties agreed that if there is a disagreement, the parties would follow the recommendation of the child's pediatrician, but that either party had a right to seek court intervention if they did not agree with the decision (see Custody Stipulation, page 4). The Court does not find that provision to be manifestly unfair to either party. Third, with respect to extracurricular activities, the parties, in sum and substance, agreed that each child shall be entitled to participate in one extracurricular activity with the cost being shared on a "50/50" basis, with consent being required in order to trigger a financial responsibility for same. The Court does not find this provision to be unconscionable or manifestly unfair to one parties inasmuch as the Plaintiff had the lower share of the parties' combined parental income and agreed to split the cost on an equal basis and inasmuch as consent is required to trigger a financial responsibility for same. Likewise, the parties effectively conferred upon themselves joint decision-making with respect to the area of extracurricular activities. There is nothing unfair about that agreement. 
Fourth, the parties agreed to each of them would create a music production space for C III in their basement and that they would each pay for one session per month of C III's music production studio activity until they have a studio. The Court does not find this provision to be manifestly unfair or unconscionable inasmuch as the parties agreed to provide a space for C III in order to save on costs of this activity, the parties both agreed to this, effectively providing them with joint decision-making over this issue, and that the Plaintiff has the lower share of the parties' combined parental income. Fifth, the parties agreed that to send the children to summer camp and split the cost of same on a "50/50" basis (see Custody Stipulation, page 5). The Court does not find this provision to be manifestly unfair inasmuch as the agreement to send the children to camp was a joint decision and inasmuch as they are equally splitting the cost of same.The parties also agreed to an additional protection that if there is going to be a change in camp, the party seeking the change must obtain the agreement of the other before the nonrequesting is obligated to pay his or her 50% of same.
Sixth, with respect to schooling, the parties agreed that C III and C A would attend a boarding school and that CH A would attend a different independent school. The parties also agreed that with respect to the actual choice of school, the parties would discuss same, could then meet an educational consultant if they disagreed with the other, with the Plaintiff having final decision-making authority in the event of a further disagreement, without prejudice to the Defendant's right to petition a court of competent jurisdiction. The Court does not find this to be manifestly unfair or unconscionable inasmuch as the parties agreed to send one child to an independent school and two other children to boarding school. While the Defendant complains that the children should be in public school, that is contrary to their agreement that the children attend either an independent school or boarding school, and, in any event, the Defendant had a remedy if he disagreed with the decision: petition a court for relief.
Accordingly, and for all of the aforesaid reasons, it is hereby:
ORDERED, that so much of Branch (1) of the Defendant's Order to Show Cause dated October 25, 2023 which seeks to set aside the Custody Stipulation and the Financial Stipulation on the ground of unconscionability be and the same is hereby DENIED.
[*13]MODIFICATION OF CUSTODY
The standard for modification of an existing custody or parental access order is well-known. In order to modify an existing court-sanctioned custody arrangement, there must be a showing of a subsequent change in circumstances so that modification is required to protect the best interests of the child. Matter of Newton v. McFarlane, 174 AD3d 67 (2d Dept. 2019); Henrie v. Henrie, 163 AD3d 927 (2d Dept. 2018); Matter of Feliciano v. King, 160 AD3d 854 (2d Dept. 2018); Matter of Miller v. Shaw, 160 AD3d 743 (2d Dept. 2018). Not only must the moving party demonstrate that a change of circumstances has occurred, but the moving party must also demonstrate that modification is necessary to ensure the children's (or child's) best interests. See generally Matter of Chris X. V. Jeanette Y., 124 AD3d 1013 (3d Dept. 2015). See also Grayson v. Fenton, 13 AD3d 914 (3rd Dept. 2004).
It is well-settled that the primary consideration in all custody disputes is the best interest of the child. See Keating v Keating, 147 AD2d 675 (2d Dept. 1989). It is further established that as a general rule, it is error as a matter of law to make an order respecting custody based on controverted allegations without having had the benefit of a full hearing (see Biagi v. Biagi, 124 AD2d 770 (2d Dept. 1986); see also Colley v. Colley, 200 AD2d 839 (3d Dept. 1994)), and custody determinations should generally be made only after a full and plenary hearing. Palazzola v. Palazzola, 188 AD3d 1081 (2d Dept. 2020); see also Trazzera v. Trazzera, 199 AD3d 855 (2d Dept. 2021). A noncustodial parent seeking a change in custody is not automatically entitled to a hearing, but must make an evidentiary showing sufficient to warrant a hearing (see McNally v McNally, 28 AD3d 526, 527, 816 NYS2d 98 [2006]; Matter of Simmons v Budney, 5 AD3d 389, 390, 772 NYS2d 543 [2004]; Corigliano v Corigliano, 297 AD2d 328, 329, 746 NYS2d 313 [2002]; DiVittorio v DiVittorio, 283 AD2d 390, 390-391, 723 NYS2d 863 [2001]). DiVittorio v. DiVittorio, 36 AD3d 848 (2d Dep't 2007). However, while the general right to a hearing in custody and visitation cases is not absolute, where facts material to the best interest analysis, and the circumstances surrounding such facts, remain in dispute, a hearing is required. See Palazzola v Palazzola, supra; see also Trazzera v. Trazzera, supra. See also Stolzenberg v. Stolzenberg, 209 AD3d 688 (2d Dept. 2022). The Court of Appeals has made clear:
Given the goals of stability and permanency, as well as the weight of the interests at stake, the societal cost of even an occasional error in a custody proceeding is sizeable. Custody determinations therefore require a careful and comprehensive evaluation of the material facts and circumstances in order to permit the court to ascertain the optimal result for the child. The value of a plenary hearing is particularly pronounced in custody cases in light of the subjective factors—such as the credibility and sincerity of the witnesses, and the character and temperament of the parents—that are often critical to the court's determination.
S.L. v. J.R., 27 NY3d 558 (2016).
Here, the Court finds that there are sufficient facts in dispute to warrant a hearing on the Defendant's application seeking to modify the parties' Custody Stipulation with respect to CH A. While some of the Defendant's allegations predate the date of the Custody Stipulation (and the Court has not considered those herein), the Court notes that the Defendant has alleged that the Plaintiff has twice had CPS called on him since the date of the Custody Stipulation. The Court [*14]notes that, without contradiction, that the Plaintiff made a CPS complaint against the Defendant on April 12, 2023 and that she filed a Family Offense Petition on August 7, 2023 alleging that the Defendant abuses the children. The Court cannot simply ignore or cast there allegations aside. See generally Matter of Honeywell v. Honeywell, 29 AD3d 857 (2d Dept. 2007) (repeated and unfounded allegations of abuse may constitute conduct inconsistent with the best interests of the children). The Court has considered that CH A is now eleven (11) years old, and while her wishes and desires may be some indication of her best interests (see generally Silverman v. Silverman, 186 AD3d 123 (2d Dept. 2020)), a child's preference is not determinative (see generally Matter of Ceballos v. Leon, 134 AD3d 931 (2d Dept. 2015)).
Additionally, the Court has considered the unrefuted allegation of the AFC that CH A has witnessed the Defendant use extreme corporal punishment on her brothers. However, the Court has also considered that there was an incident - after the Custody Stipulation - where CH A (again) attempted self-harm (confirmed by the AFC). While the Court is unsure what the impetus was for that self-harm, the Court cannot ignore that undisputed fact, and the Court must take live testimony from the parties to ascertain how CH A was impacted (if at all), and whether or not the existing custodial arrangement remains in the best interests of CH A. This Court would effectively be abdicating its duty to this child if it did not take live testimony from the parties, given the seriousness of the allegations proffered by both parties. Furthermore, since the Defendant's application only seeks a transfer of custody of CH A, and not her two brothers, this Court must consider the effect such a transfer would have on CH A and well as on her two brothers, as sibling relationships should be not disrupted unless there is some overwhelming need to do so. See generally White v. White, 209 AD2d 949 (4th Dept. 1994). Since custody determinations depend to a great extent upon the court's assessment of the credibility of the witnesses, as well as the parties' character, temperament and sincerity (see Matter of Brass v. Otero, 40 AD3d 752 (2d Dept. 2007), it is hereby:
ORDERED, that Branch (3) of the Defendant's Order to Show Cause dated October 26, 2023, be and the same is hereby REFERRED TO A HEARING.
CONTEMPT OF COURT
Contempt is a drastic remedy which should not be granted absent a clear right to the relief. Pinto v. Pinto, 120 AD2d 337 (1st Dept. 1986) (emphasis added); see also Board of Mgrs. of the Empire Condominium v. Attwood, 2014 NY Misc. LEXIS 2265 (Supreme Court New York County 2014); see also Usina Costa Pinto SA v. Sanco Sav Co. Ltd., 174 AD2d 487 (1st Dept. 1991). Contempt is a drastic remedy which necessitates strict compliance with procedural requirements. Loeber v. Teresi, 256 AD2d 747 (3d Dept. 1998) (emphasis added); see also C.M. v. E.M., 2023 NY Misc. LEXIS 22693 (Supreme Court Nassau County 2023); see also S.P. v. M.P., 210 AD3d 1439 (4th Dept. 2022).
Pursuant to Judiciary Law § 753(A)(3):
"A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced, in any of the following cases:
* * *
"3. A party to the action or special proceeding, an attorney, counsellor, or other person, for the non-payment of a sum of money, ordered or adjudged by the court to be paid, in a case where by law execution can not be awarded for the collection of such sum except as otherwise specifically provided by the civil practice law and rules; or for any other disobedience to a lawful mandate of the court."
School Tuition
The Plaintiff does not dispute the Defendant's claims that the TRO's with respect to the payment of the Rectory School, Hebron Academy and the Hyde School have been paid. The Plaintiff does not submit any evidence that any additional tuition fees are due beyond the parameters of the TRO's. Accordingly, it is hereby:
ORDERED, that Branches (a) and (c) of the Plaintiff's Order to Show Cause for Contempt dated December 20, 2023 be and the same are all hereby deemed MOOT.
Other Add-On Expenses
The Financial Stipulation provides:
The parties shall equally divide the cost of the children's add-on expenses, including their agreed upon extracurricular activities, their unreimbursed medical, dental, orthdontia and optical expenses, their educational expenses such as: Private school tuition, applications, tutoring.
The parties shall continue to use Our Family Wizard and equally share the cost of same. All invoices and receipts in connection with add-on expenses for the children must be uploaded into Our Family Wizard within 30 days of incurring such debt, and reimbursement to the parent that paid the cost must be made within 15 days of presentation with the receipt/invoice.
The parties agree that with respect to tuition for the children's private school education, the father shall pay his 50 percent of the children's tuition cost directly to the mother via Zelle or some other ACH payment, and that the mother shall remit the full payment of the tuition to the school. The mother shall provide the father with all invoices and receipts in connection with the tuition in a timely fashion so that he knows when to make such payment and that the payment has been made.
(see Financial Stipulation, page 4) (emphasis added).
Here, the Court is constrained to deny the Plaintiff's application for contempt without prejudice and with leave to renew upon the submission of proper papers. While it would appear that some of the Our Family Wizard entries, themselves, are appended to the Plaintiff's moving papers, the Plaintiff fails to append the actual invoice and proof of payment to her moving papers with respect to some of those expenses, such as camp and some of the tuition invoices. Without the actual invoice and proof of payment, this Court is unable to grant the Plaintiff the drastic remedy of contempt at this time, as that evidence should have been before the Court. It also appears from the Plaintiff's moving papers that there are invoices or receipts from her "gmail" account, but the Court is unsure, based on this Record, as to whether or not those were posted to Our Family Wizard, as mandated by the parties' Financial Stipulation. Rather than deny the [*15]request outright, since these expenses are for the benefit of the parties' children, the Court grants the Plaintiff leave of Court to re-file the application with the appropriate proof appended thereto. Accordingly, it is hereby:
ORDERED, that Branches (b) and (d) of the Plaintiff's Order to Show Cause for Contempt dated December 20, 2023 be and the same are all hereby DENIED WITHOUT PREJUDICE and with leave to renew upon the submission of proper papers insofar as indicated herein.
COUNSEL FEES/SANCTIONS
The Plaintiff seeks both sanctions and counsel fees. The Court has carefully reviewed the invoices appended to the Plaintiff's moving papers (see NYSCEF Document No.: 334) and cross-moving papers (see NYSCEF Document No.: 353). The Court notes that both sets of invoices contain charges dating back to 2021, which was before the parties agreed to the terms of the Stipulation(s), and that there appears to be charges related to Family Court matters. The Court is unable to ascertain what time charges were incurred after the parties entered into both Stipulation(s), and, even if they do post-date the Stipulation(s), whether or not those charges pertain the family court matters or these matters inasmuch as those times charges are not isolated with enough specificity. The Court therefore denies the Plaintiff's application for sanctions and/or counsel fees without prejudice to her right to re-file the application with the time charges incurred in connection herewith isolated, indicated or specifically denoted on her invoices.
Accordingly, it is hereby:
ORDERED, that Branch (e) of the Plaintiff's Order to Show Cause for Contempt dated December 20, 2023 and Branch (1) of the Plaintiff's Notice of Cross-Motion dated January 10, 2024 be and the same are all hereby DENIED WITHOUT PREJUDICE and with leave to renew/refiling upon the submission of proper papers insofar as indicated herein.
Any other relief requested not specifically addressed herewith is hereby DENIED.
All parties and counsel and the attorney for the children are hereby directed to appear in the Supreme Court, Nassau County, before the undersigned Justice at the Matrimonial Center in IAS/Matrimonial Part 11 on March 26, 2024 at 10:00 a.m. for a PRE-HEARING CONFERENCE and to select a hearing date.
The foregoing constitutes the DECISION & ORDER of this Court. 
Dated: February 9, 2024
Mineola, New York
E N T E R :
Hon. Edmund M. Dane, J.S.C.

Footnotes

Footnote 1:The Custody Stipulation was so ordered by the undersigned Justice on April 12, 2023.

Footnote 2:The Financial Stipulation was so ordered by the undersigned Justice on April 12, 2023.

Footnote 3:At times hereinafter in this Decision and Order, the Custody Stipulation and the Financial Stipulation may be collectively referred to as the "Stipulation(s)".

Footnote 4:In the absence of the undersigned Justice.

Footnote 5:He sets forth that the complaints were made as follows: November 24, 2020, determined as unfounded on March 25, 2021; November 14, 2022, determined unfounded on May 1, 2023; February 2, 2023, determined to be unfounded on May 1, 2023; April 12, 2023, determined to be unfounded on May 1, 2023; and August 7, 2023, determined to be unfounded on August 25, 2023.

Footnote 6:The AFC sets forth that the Final Order of Protection, in sum and substance, requires the Defendant to stay away from the Plaintiff, C III and C A, and directs the Defendant to refrain from communication with the Plaintiff, C III and C A, except for parenting or the well-being of the children, as well as directing the Defendant to refrain from committing any hazardous acts with respect to all three children.

Footnote 7:The Second Department has also emphasized that stipulations are not to be lightly case aside especially where the party seeking to vacate the stipulation was represented by counsel. Kelly v. Chavez, 33 AD3d 590 (2d Dept. 2006).

Footnote 8:See Custody Stipulation, page 10, lines 16-19; see Financial Stipulation, page 20, lines 8-11.

Footnote 9:In both the Custody Stipulation and Financial Stipulation, this Court wishes to punctuate that it specifically told the parties that they had the right to proceed to trial with respect to the issues that they agreed to settle.

Footnote 10:The Court also notes that the Financial Stipulation itself provides the following:
THE COURT: Are you each satisfied with the representation you have received?
MS. L: Yes.
MR. L: Yes.
The Court finds that the Defendant's on the Record acknowledgment that he was satisfied with the representation he received from his counsel defeats his claim that his attorney was "bulldozed".

Footnote 11:$1,700.00 per month x 12 (monthly per year) x 11 (approximate years remaining on his child support obligation) = $224,400.00.

Footnote 12:The Defendant does not allege that he made an application to adjourn the trial and was denied this request.

Footnote 13:It does not appear to the Court that the Defendant claims that the parental access schedule, both regular and holiday and summer, to be unconscionable or manifestly unfair. Therefore, those provisions of the Custody Stipulation are not discussed herein.