Anonymous A-1 v Anonymous B-1 (2024 NY Slip Op 50743(U))

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

[*1]

Anonymous A-1 v Anonymous B-1

2024 NY Slip Op 50743(U)

Decided on June 17, 2024

Supreme Court, Bronx County

Negron, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.



Decided on June 17, 2024
Supreme Court, Bronx County

Anonymous A-1, Plaintiff(s),

againstAnonymous B-1, Defendant(s)
Index No. XXXXX/2020E

Attorney(s) for Plaintiff-Movant:
David Mark Shapiro, Esq.
180 East 162nd Street, Suite 1CD
Bronx, NY 10451
T: (718) 681-2628
E: davidm925@aol.com
Attorney(s) for Defendant-Respondent:
Law Office of Bryan J. Hutchinson
By: Bryan Joshua Hutchinson, Esq.
1443 East Gun Hill Road, Suite 2
Bronx, NY 10469
T: (718) 671-0900
E: bjhlaw@gmail.com
Wanda Y. Negron, J.

Matrimonial jurists are occasionally presented with motions—or consolidated and/or transferred plenary actions after the issuance of the judgment of divorce—to set aside either written stipulation of settlement, executed pursuant to DRL § 236 (B) (3), or oral stipulations of [*2]settlement if they sit in the First and Second Judicial Departments. While several cases may settle outside court and by the subsequent issuance of a "60-Day" Order (DRL § 211; 22 NYCRR §§ 202.21 [i], 202.50), other cases settle in court or otherwise return for an allocution, providing the trial court with an opportunity to allocute the parties on the record to discern if it is satisfied that the parties have knowingly and willingly entered into an agreement, free of coercion and duress, and that the parties, of sound mind, understand their rights and obligations as set forth therein. Thus, when a party returns to court within months of having been allocuted on a written agreement claiming that such agreement is manifestly unfair or unconscionable or that they failed to understand the agreement due to a language barrier, such allegations should cause the jurist pause, and warrant a meticulous review of the facts alleged. Before this Court is one such application.FACTUAL AND PROCEDURAL BACKGROUNDThe parties were married on October XX, 1997, in the City of New York, County of Bronx and the State of New York in a XXXXX ceremony. There is one (1) child of the marriage, who is now sixteen (16) years old.
Plaintiff commenced the underlying action for divorce by way of a Summons with Notice on July 14, 2020, by way of prior counsel, Zelenitz, Shapiro & D'Agostino, P.C. Defendant appeared by present counsel, Bryan J. Hutchinson, Esq., on September 8, 2020, by way of a Notice of Appearance and Demand for Complaint. Plaintiff filed a Verified Complaint on November 5, 2020, wherein she sought a divorce judgment pursuant to DRL § 170 (7), and Defendant joined issue by way of a Verified Answer and Counterclaim on November 11, 2020. However, Plaintiff had filed a Request for Judicial Intervention and a Request for a Preliminary Conference on October 21, 2020.
The underlying action was initially assigned to the prior jurist, the Honorable Patsy Gouldborne, J.S.C. A set forth hereinbelow, the preliminary conference was held on December 1, 2020. This jurist inherited this case thereafter.
On the scheduled trial date of this matter, December 5, 2023, after this matter had been on the Court's calendar for over three (3) years, the parties executed a sixty-five-page, type-written stipulation of settlement that resolved all ancillary issues in their divorce action (hereinafter "Stipulation").
In their Stipulation, the parties agreed, in part, that they would share joint legal custody of the minor child, with specific decision-making parameters, and that Plaintiff would have residential custody, subject to a specific parental access schedule for Defendant. Moreover, Defendant would pay to Plaintiff the presumptive amount of basic child support pursuant to the Child Support Standards Act through the Support Collection Unit.
The parties, who do not dispute having an interest in real property located at XXXX East 223 Street, Bronx, NY XXXXX (hereinafter the "Marital Residence"), agreed to the distribution of their fifty-percent interest therein as follows:
"[t]he parties are one-half owner in real property known as [XXXX] East 223rd Street, Bronx, NY [XXXXX] . . . with a third party. The [Marital Residence] was purchased during the marriage and is marital property. The parties acknowledge that the [Defendant] contributed the sum of $26,000.00 towards the purchase and closing cost [*3]from his separate property and shall be entitled to a credit of $26,000.00. The subject premises has an appraised value of $710,000.00. The parties acknowledge that their one-half interest is valued at $355,000.00. The [Marital Residence] is not encumbered by a mortgage. Within 90 days from the signing of this Stipulation of Settlement the [Defendant] shall pay the [Plaintiff] her one half of the parties' interest in the [Marital Residence] in the amount of $177,500.00 left [sic] his credit of $26,000.00. The net amount payable to the [Plaintiff] after deducting the $26,000.00 credit to the [Defendant] is $151,500.00. The [Defendant] waives the right to any credit for reduction in the principal balance of the mortgage, repairs, improvement or the payment of violations and liens on the [Marital Residence]. Within 30 days [Defendant] will provide [Plaintiff] proof of the loan application and within 60 days [Defendant] will provide her with proof of approval of the application."Regarding the distribution of retirement assets, the parties waived their rights to any interest in the other's retirement assets.
Within the Stipulation, the parties appended mirroring affidavits executed by each party (often referred to as "allocution affidavits"), wherein the "Affidavit of [Plaintiff]" provides, in part, that:
"1. That she has read this Agreement, word for word, paragraph by paragraph.2. That she understands its contents.3. That she understands and appreciates the legal effect of her signature to this Agreement with [Defendant] . . .4. That this Agreement completely and perfectly expresses the understanding of the terms of the settlement which she has arrived with the [Defendant].5. That this Agreement expresses the entire understanding and agreement between herself and the [Defendant], without any secret promises or other agreements or inducement, not therein expressed or stated.6. That her assent to this Agreement was reached after mature deliberation, and independent investigation and inquiry.7. That her execution of this Agreement is of her free act and deed.8. That this Agreement is not the result of any collusion between herself and the [Defendant] or between himself [sic] and any third person or persons.9. That neither the terms of this Agreement arrived at between her and the [Defendant], or her signing and acknowledging the foregoing Agreement was occasioned, brough about or influenced by the use of any duress, coercion or undue influence practiced, brought or exercised upon her in any manner by any person whomsoever.10. That she is not under the influence of any drugs or alcohol and/or any impairment preventing her from understanding the terms and provisions of this Agreement and the impact of her executing same.11. That she had the opportunity to review the terms of the Agreement with her attorneys, and is satisfied with the services rendered to her by said attorneys."In addition, Paragraph I of Article XXIII of the parties Stipulation provides, in part, that:
"[e]ach Party declares that: (a) he or she fully understands the terms, covenants and conditions of this Agreement; (b) he or she believes this Agreement is fair, just, adequate and reasonable as to each of them; (c) he or she is fully satisfied with its terms: and (d) after due consideration and the advice of his or her attorney, he or she freely and voluntarily accepts and agrees to be bound by the terms, conditions and provisions set forth in this Agreement."Moreover, Paragraph B of Article XXV of the parties' Stipulation provides that:
"[t]he Parties acknowledge that each has had a full opportunity to read and review this agreement with independently selected legal counsel prior to its execution and acknowledges that the agreement has not been the result of any fraud, duress, or undue influence. Neither Party has been or is under the influence of any drug, alcohol or any other substance which could affect or impair the exercise of proper judgment during the negotiations and execution of this agreement."On December 5, 2023, the parties' Stipulation was marked as Court's Exhibit 1 and was entered into evidence on consent.[FN1]
The Court conducted an allocution of the parties in open court on the Stipulation, wherein the following colloquy took place:
"THE COURT: Does this agreement marked [as] Court Exhibit 1 resolve all ancillary issues in this matter, ma'am?THE PETITIONER: Yes.THE COURT: Sir.THE RESPONDENT: Yes, ma'am.THE COURT: Did you read this agreement word for word, paragraph for paragraph and discussed it with your attorney, ma'am?THE PETITIONER: Yes.THE RESPONDENT: Yes.. . .THE COURT: . . . Do you understand your rights and obligations set forth in your written stipulation of settlement?THE PETITIONER: Yes.THE RESPONDENT: Yes.THE COURT: Has anyone forced you or coerced you into entering into this written agreement today?THE PETITIONER: No.THE RESPONDENT: No.THE COURT: . . . Are you agreeing to the terms of the settlement agreement on your own free will?THE PETITIONER: Yes.THE RESPONDENT: Yes.THE COURT: Are either of you under any influence of medication, drugs or alcohol that could impair your judgment or affect your ability to understand either the terms that are in your written agreement or what is happening here today?THE RESPONDENT: No.THE PETITIONER: No.. . .THE COURT: Are you satisfied with the services that your attorney has provided?THE PETITIONER: Yes.THE RESPONDENT: Yes.THE COURT: Has your attorney answered all your questions?THE PETITIONER: Yes.THE RESPONDENT: Yes.THE COURT: Do you have any questions for your attorney?THE PETITIONER: No.THE RESPONDENT: No.. . .THE COURT: . . . Do either of you have any questions for the Court?THE PETITIONER: No.THE RESPONDENT: No."The Plaintiff's prior counsel thereafter successfully inquired of Plaintiff as to the grounds for divorce pursuant to DRL § 170 (7). Plaintiff's Counsel was directed to file the final divorce papers within sixty (60) days of December 5, 2023, on notice to Defendant's Counsel, pursuant to 22 NYCRR § 202.48.
Nevertheless, on February 19, 2024, a little over two (2) months after the inquest and allocution on the Stipulation, Plaintiff, by present counsel, David M. Shapiro, Esq., moved by way of the underlying order to show cause for an Order vacating and/or setting aside the parties' Stipulation. The Court made the Order to Show Cause returnable on March 13, 2024.
SALIENT ARGUMENTS
Plaintiff contends that within her moving papers that (a) she misunderstood the terms of the Stipulation; (b) that the terms of the Stipulation were unconscionable; (c) that the terms of the Stipulation were unfair and unjust; and (d) that she made a mistake.
Plaintiff alleges that her prior attorney "gave [her] a false reason why [she] was not entitled to a part of [Defendant's] pension" and that she was advised of this one day before she was shown the Stipulation. Plaintiff asserts that she is not "fully English speaking" and that neither her prior attorney nor the Court provided her with a Spanish Language interpreter. Plaintiff claims that her prior attorney first showed her the Stipulation, written in the English language, one day prior to December 5, 2023, wherein page six through thirteen were missing. Plaintiff argues that the portions regarding the distribution of the Marital Residence were unjust, inappropriate, and unfair and that she did not understand the terms, nor were they explained to her by her prior attorney. Plaintiff asserts that her prior attorney suggested that she agree to waive her interest in Defendant's "pension, TDA, IRA and 401 (k)."
Plaintiff's counsel asserts that Plaintiff "waived her interest in Defendant's pension as well as any property acquired by Defendant during the marriage" and that "[t]he Stipulation provides for equitable distribution of the value of the marital residence pursuant to terms which the Plaintiff did not understand."
On the initial return date of the Order to Show Cause, March 13, 2024, the Court took judicial notice of the Preliminary Conference Stipulation/Order, noting that neither party requested an interpreter as far back as December 1, 2020. Nevertheless, by way of an Interim Order on Motion issued that day, the Court set forth a briefing schedule for the underlying motion, providing for the submission of opposition and reply papers, deeming it sub judice on May 2, 2024. The motion was fully briefed.
In opposition, Defendant vehemently contests Plaintiff's allegation that she was not able to fully understand the terms of the parties' Stipulation. Defendant notes the Plaintiff's court filings were executed in the English language, including the Verified Complaint and a Statement of Net Worth, and that Plaintiff's deposition took place for approximately two hours without the assistance of a Spanish Language interpreter. Defendant submits a copy of the deposition transcript with his opposition papers. Defendant refers to Plaintiff's professional and educational accolades as indicated in Plaintiff's resume, a copy of which he attaches to his papers in opposition.
Regarding the distribution of the Marital Residence, Defendant elucidates that the Marital Residence, in which the parties have a fifty-percent ownership, and an individual by the name of XXXXXX owns the other fifty percent, was appraised by Jeskell Appraisal Services during the pendency of the divorce action.[FN2]
Defendant submits a copy of the subject deed, which corroborates same. Defendant, who submits a copy of the Appraisal Report, asserts that the Marital Residence was appraised at a value of $710,000.00. Defendant indicates that the mortgage was paid in 2023, thereby making the parties' fifty-percent interest amount to $355,000.00. Defendant states that, as expressly indicated in their Stipulation, the parties had agreed that he would receive a credit in the amount of $26,000.00, for his separate property funds used to pay the downpayment for the Marital Residence. Defendant asserts that after such credit is applied, Plaintiff would be entitled to $151,500.00, the amount the parties ultimately agreed Plaintiff would receive within the express terms of the Stipulation. Defendant further explains that in consideration of the foregoing, he agreed to waive any credit for all repairs made by him after the commencement of the action, including the $76,594.00 in attorney's fees, repairs and other fees paid by him and XXXXXX to satisfy violations against the Marital Residence. Defendant states that Plaintiff would have been responsible for $19,148.50 for said expenses.
Regarding the distribution of retirement assets, Defendant explains that his previous employer, XXXXX Electronics, for whom he worked from approximately 2000 to 2018, did not provide him with either health insurance benefits or retirement benefits. Defendant asserts that, in fact, he did not have any pension and retirement benefits before the commencement of the underlying divorce action. Defendant explains that he began working with Montefiore on or about XXXXX XX, 2019, approximately one (1) year before the filing of the instant divorce [*4]action, July 14, 2020. Defendant avers that it was only until on or about July 2022 that he participated in the Montefiore Einstein 403(b) Plan. Defendant states that it is he who waived an interest in a retirement asset, as Plaintiff, who is employed by XXXXX Terrace, has been a member of 1199 SEIU Pension Plan since on or about 2007.
Defendant further argues in opposition that Plaintiff had a full and fair opportunity to conduct discovery in this action. Defendant avers that he was deposed for two (2) days by Plaintiff's prior counsel. Defendant submits a copy of his deposition testimony with his opposition papers. Defendant further contends that the parties were allocuted in open Court.
Defendant seeks to be reimbursed for his legal fees, as is required by the parties' Stipulation.
In reply, Plaintiff asserts that she does not fully understand the English language and that she "did not understand everything about these proceedings." Plaintiff avers that the fact that she attended Bronx Community College does not mean that she fully understood the English language, noting that before she was allowed to enroll in courses for credit, she had to attend a remedial class in English. Regarding the deposition, Plaintiff avers that she was never told that she could request a Spanish Language interpreter and that there were many times during the virtual deposition that she did not understand what was being said to her.
Plaintiff indicates that the last appraisal of the Marital Residence was conducted in 2021, and that she believes that the property has increased in value since that time. Plaintiff believes that Marital Residence "must be re-appraised."
Plaintiff vehemently opposes Defendant's application for counsel fees. Plaintiff's counsel argues that there is no legal basis for the request for counsel fees as Defendant earns more income than Plaintiff.
LEGAL DISCUSSION
Initially, the Court notes that it retains the ability to hear this application—thereby not requiring the filing of a plenary action—as this Court has yet to issue a judgment of divorce (see Cruciata v Cruciata, 10 AD3d 349, 350 [2d Dept 2004]; cf. Marin v Anisman, 69 AD3d 440 [1st Dept 2010], lv denied 14 NY3d 706).
I. Plaintiff's application to vacate the parties' Stipulation based upon unconscionability is DENIED, without a hearing, as Plaintiff fails to establish a prima facie case for both procedural and substantive unconscionability.
"Marital settlement agreements are judicially favored and are not to be easily set aside" (Simkin v Blank, 19 NY3d 46, 52 [2012] [internal citations omitted]). However, "[b]ecause of the fiduciary relationship between [spouses], separation agreements may be set aside 'under circumstances that would be insufficient to nullify an ordinary contract'" (Logiudice v Logiudice, 67 AD3d 544, 544 [1st Dept 2009], quoting and citing Levine v Levine, 56 NY2d 42, 47 [1982]). "[E]fforts to set aside such agreements will be subject to a 'far more searching scrutiny' and will be 'less likely to prevail where the party had the benefit of independent representation during the negotiation and execution of the agreement'" (id. at 544, citing Levine, at 48). Moreover, "[a] separation agreement or stipulation of settlement which is fair on its face will be enforced [*5]according to its terms unless there is proof of fraud, duress, overreaching, or unconscionability" (Kabir v Kabir, 85 AD3d 1127, 1127 [2d Dept 2011] [internal quotation marks and citations omitted]).
It is axiomatic that "[a]n unconscionable agreement is one which no person in his or her senses and not under delusion would make on the one hand, and which no honest and fair person would accept on the other" (Logiudice, 67 AD3d at 545, citing Christian v Christian, 42 NY2d 63, 71 [1977]; McCaughey v McCaughey, 205 AD2d 330, 331 [1st Dept 1994]). In other words, "unconscionability is reserved for the type of agreements so one-sided that it 'shock[s] the conscience . . .'" (Kojovic v Goldman, 35 AD3d 65, 69 [1st Dept 2006] [internal citation omitted], lv denied 8 NY3d 804 [2007]; McCaughey, 205 AD2d at 331). However, "an agreement is not unconscionable merely because, in retrospect, some of its provisions were improvident or one-sided, and simply alleging an unequal division of assets is not sufficient to establish unconscionability" (Schultz v Schultz, 58 AD3d 616, 616 [2d Dept 2009] [internal quotation marks and citations omitted]; Fishof v Grajower, 262 AD2d 118 [1st Dept 1999]; O'Hanlon v O'Hanlon, 114 AD3d 915, 916 [2d Dept 2014]).
It is the party seeking to vacate the stipulation of settlement due to unconscionability that burden of showing that its terms were, in fact, "unconscionable" (O'Hanlon, 114 AD3d at 916). More specifically, such burden requires showing that "the contract was both procedurally and substantively unconscionable when made—i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party" (Gillman v Chase Manhattan Bank, N.A., 73 NY2d 1, 10 [1988] [internal citations and quotation marks omitted]).
A hearing is warranted only when sufficient facts are alleged (i.e., a prima facie case) and where triable issue of fact is raised within the papers (Karen E. v Yoram, 144 AD3d 1081, 1082 [2d Dept 2016]; cf. Jon v Jon, 123 AD3d 979 [2d Dept 2014]).
(a) Procedural Unconscionability.
"The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice" (Gillman, 73 NY22d at 10-11; Cilento v Cilento, 186 AD3d 556 [2d Dept 2020]). Some examples of procedural unconscionability include, but are not limited to, high pressure or deceptive tactics; inequality of bargaining power; deceptive conduct or contract language; and an imbalance in the acumen and understanding of the parties (see id. at 11). Whether a party is unrepresented is also a factor to consider.
Here, it is undisputed that the parties were each represented by legal counsel during the entirety of the divorce action. There is nothing to suggest within the papers that negotiations took place other than by the attorneys or with the attorneys present. Saliently, Plaintiff, within her support affidavit, does not specifically allege any improper conduct or the use of high-pressure or deceptive tactics by either Defendant or Defendant's Counsel or a disparity in bargaining power—in fact, it is only Defendant's counsel that alleges overreaching took place without explaining how such overreaching took place, as explained in further detail hereinbelow. The gravamen of Plaintiff's contention, in so many words, is that her prior attorney failed to adequately explain the Stipulation to her; that the prior attorney otherwise provided the Stipulation late; and that her lack of fluency in the English Language led to a lack of [*6]understanding.
However, based upon the record provided herein, it cannot be said that Plaintiff did not have a meaningful choice during negotiations. As more fully set forth hereinbelow, the Court finds that Plaintiff had ample opportunity to seek clarification of any matter and further opportunity to take other action, such as requesting an adjournment—even at the eve of trial or at trial—to have a further opportunity to review the Stipulation or to obtain new counsel. Moreover, Plaintiff was allocuted on the Stipulation in open court, where she indicated, under penalty of perjury, that she understood the Stipulation. See e.g. N.J.L. v C.A.L., 81 Misc 3d 1244[A], 2024 NY Slip Op 50140[U], *1, *10 (Sup Ct, Nassau County 2024, Dane, J.) (trial court did not find that defendant, who sought to vacate a financial stipulation of settlement, established procedural unconscionability where defendant did not allege that Plaintiff engaged in deceptive tactics in order to induce him to agree to the terms of the financial stipulation of settlement; as both parties were represented by counsel; as defendant could have executed a consent to change attorney form and retained new counsel if he felt that his attorney was not effectively advocating for him; and as there was insufficient evidence regarding an imbalance in the understanding and acumen of the parties, as both parties acknowledged, on the record, that they understood the terms of the financial agreement).
Thus, the Court finds that Plaintiff has failed to make a prima facie case for procedural unconscionability, and such failure is fatal to her application for unconscionability overall.
(b) Substantive Unconscionability.
"The substantive element of unconscionability requires, in sum and substance, a showing that one or more of the key terms of the contract that are unreasonably favorable to the other party" N.J.L, 2024 NY Slip Op 50140[U]; Cilento, 186 AD3d 556). However, as set forth above, a stipulation of settlement is not unconscionable simply because it might have been improvident or one-sided (O'Hanlon, 114 AD3d at 916).
Here, even if this Court had found that Plaintiff had made a prima facie case establishing procedural unconscionability, she fails to establish substantive unconscionability, nevertheless, as detailed hereinbelow.
(i) The Distribution of the Marital Residence.
While Plaintiff argues that the portion of the Stipulation regarding the distribution of the Marital Residence is completely "unjust, inappropriate and unfair," within her moving papers, she neglects to explain why or how such distribution was "unjust, inappropriate and unfair," let alone unconscionable. It is only within her reply papers that she argues, for the first time, that the parties used an appraisal date of 2021 to determine the value of the Marital Residence for purposes of its ultimate distribution, and an updated appraisal should have been used. Even if this Court were to consider this argument, which was improperly set forth for the first time in reply (see generally Lumbermens Mut. Cas. Co. v Morse Shoe Co., 218 AD2d 624, 625 [1st Dept 1995]), it would not alter this Court's decision. The record reflects that the appraisal date of January 13, 2021, was used to distribute the marital share of the Marital Residence as of December 5, 2023. Such fact, alone, does not "shock the conscience" of this Court. The fact that parties decide to use a valuation date on a specific date after the date of commencement of the [*7]action, but before the date of settlement, alone, is not a decision which no person in their senses and not under delusion would make on the one hand, and which no honest and fair person would accept on the other—especially in a matter like this one, where the parties expressly agreed that "[Defendant] waive[d] the right to any credit for reduction in the principal balance of the mortgage, repairs, improvement or the payment of violations and liens on the [Marital Residence]."
Moreover, Plaintiff neglects to address that Paragraph A of Article XXV of the Stipulation expressly accounts for the fact that an updated appraisal could have been obtained, where:
"[e]ach Party has had the opportunity to make full and independent inquiry into the complete financial circumstances of the other and acknowledges that he or she knows the nature, extent and value of the other Party's property and business interests. The Parties have been advised by their respective attorneys of their right to compel discovery and inspection of the other's books and records, business and personal, and their right to have accountants, appraisers and others investigate, appraise and evaluate each other's business, if any, and property and to conduct depositions, among other procedures with respect thereto. Each Party has waived further exercise of these rights and has instructed his and her respective attorneys not to take any further steps, themselves or through others, in connection with discovery, inspection, investigation, appraisal or evaluation of the other's income, business, property, if any, or other financial circumstances. Each Party acknowledges that he or she has had ample opportunity to confer with his or her own attorney and, with full knowledge of all of the legal consequences of the intended binding effect of this agreement, agrees that no claim may be properly made hereafter upon the ground of any." (Emphasis added.)For the foregoing reasons, this Court finds that Plaintiff has failed to make a prima facie case establishing that the terms regarding the distribution of the Marital Residence are substantively unconscionable.
(ii) The Mutual Waiver of Retirement Assets.
Conspicuously absent from Plaintiff's moving papers are an identification of the "pension, TDA, IRA and 401 (k)" in Defendant's name that she waived in the Stipulation; and (b) an explanation of why or how such waiver of Defendant's "pension, TDA, IRA and 401 (k)" was unconscionable—in other words, so one-sided that it should shock the conscience of this Court—within the context of the entire Stipulation.
However, it is Defendant who identifies the retirement asset in question, his Montefiore Einstein 403(b) Plan, and provides an explanation for why the waiver of same was not unconscionable: there were no marital retirement accounts in Defendant's name to distribute as of the date of commencement. In fact, if this Court were to credit Defendant's explanation in opposition, then, ironically, it is Plaintiff that received the greater benefit from the distribution of the parties' respective retirement assets, as Defendant waived his interest in the retirement account in Plaintiff's name. This Court notes that Plaintiff does not contest Defendant's account of the facts within her reply papers.
A blanket statement asserting that a party waived an unidentified retirement asset without explaining why such waiver is unconscionable cannot be said to set forth a prima facie case for substantive unconscionability regarding the distribution of a retirement asset—especially where procedural unconscionability has not been established. For the foregoing reasons, this Court finds that Plaintiff has failed to make a prima facie case establishing that the terms regarding the waiver of retirement assets are substantively unconscionable to otherwise warrant a hearing.
II. Plaintiff's application to vacate the parties' Stipulation based upon its manifest unfairness and overreaching is DENIED, without a hearing, as Plaintiff fails to meet her prima facie case for same.
A spouse seeking to set aside a stipulation of settlement based upon overreaching "bears the burden to establish a fact-based, particularized inequality and [w]here this initial burden is satisfied, a proponent of a[n] . . . agreement suffers the shift in burden to disprove fraud or overreaching" (Petracca v Petracca, 101 AD3d 695, 698 [2d Dept 2012]).
Here, like this Court's analysis regarding procedural unconscionability, Plaintiff fails to detail how Defendant engaged in overreaching. As indicated above, both parties were represented by counsel during the entirety of this action. Moreover, a holistic review of the parties' Stipulation, including the distribution of the Marital Residence and the waiver of retirement assets, reflects no manifest unfairness. As elucidated hereinabove, the Stipulation provides an express explanation for why the parties distributed the marital share of the Marital Residence as they did, and Defendant's unrefuted account explaining the waiver of retirement accounts favors Plaintiff. Thus, no burden-shifting is required, as this Court finds that Plaintiff fails to make her prima facie case for overreaching.
III. Plaintiff's application to vacate the parties' Stipulation based upon unilateral mistake is hereby DENIED, without a hearing, as Plaintiff fails to establish any fraudulent or wrongful acts by Defendant and that the subsequent agreement does not express the intended agreement.
Initially, the Court notes that Plaintiff, in seeking to vacate the parties' Stipulation, asserts that she—and not the parties—made a mistake. The Court discerns this argument to be one for unilateral mistake.
It is well established that a unilateral mistake, standing alone, is not a sufficient basis for the recission or reformation of a contract—instead, the mistake must have been induced by the other party's fraudulent or wrongful acts and the subsequent agreement does not express the intended agreement (Greater New York Mut. Ins. Co. v United States Underwriters Ins. Co., 36 AD3d 441 [1st Dept 2007]).
In the instant matter, although Plaintiff alleges that she mistakenly agreed to the distribution of the Marital Residence and her waiver of retirement accounts, she fails to set forth any fraudulent or wrongful conduct by Defendant that induced such mistake and that the parties had intended to different bargained-for terms. As such, this Court can summarily deny Plaintiff's application to vacate the Stipulation based upon her failure to make out her prima facie case for unilateral mistake as a basis to set aside the Stipulation.
[*8]IV. Plaintiff's application to vacate the parties' Stipulation based upon a want of understanding due to an alleged language barrier is hereby DENIED, without a hearing, as Plaintiff fails to demonstrate reasonable efforts to have the Stipulation made clear to her prior to its execution.
Generally, a claim of illiteracy or lack of fluency in the English language is insufficient to avoid the well-established rule in contract law that a party who signs a contract without any valid excuse for having failed to read it is conclusively bound by its terms—thus, "[a] person who does not understand the English Language is not automatically excused from complying with the terms of a signed agreement, since such person must make a reasonable effort to have the agreement made clear to him or her" (Prete v Tamares Development 1, LLC, 219 AD3d 1537, 1538 [2d Dept 2023]; see e.g. Kassab v Marco Shoes Inc., 282 AD2d 316, 316 [1st Dept 2001] [it was incumbent upon party seeking to set aside contract, who alleged that they did not have a mastery of the English language, to submit a valid explanation for the absence of effort to have the document made clear to them]).
While this Court is mindful that matrimonial agreements are distinct from ordinary business contracts as the former involve a fiduciary relationship requiring the utmost good faith (see Christian, 42 NY2d at 72), a party seeking to set aside a contract in a matrimonial action remains charged, nevertheless, with the basic responsibility outlined above—they must demonstrate efforts at having the agreement made clear to them prior to executing same. See e.g. Majid v Hasson, 213 AD3d 1175, 1176 (3d Dept 2023).
In Majid, the Appellate Division, Third Judicial Department, recently reviewed a trial court case whose facts are like those herein. The parties, who were represented by counsel, settled their divorce action on the eve of trial by way of a written stipulation of settlement. However, shortly after its execution, wife moved to set aside the settlement agreement arguing, in part, that her lack of English proficiency and the general economic unfairness of the terms rendered the agreement unjust and unconscionable. As it pertained the want of understanding only, the Appellate Division, Third Judicial Department, held, in part, that:
"the wife argues that due to her lack of proficiency in English, she failed to read the agreement and to comprehend the legal implications of executing same. The record does not support this. There is no indication that this issue was even broached throughout the litigation—no request for a translator was made and the wife affirms that she herself made application to proceed as a poor person and for appointment of counsel, without apparent difficulty. The fact that English is her second language does not, in and of itself, prove that she was hindered in her understanding of the agreement, or was unaware of the implications of signing same. . ." (id. at 1177 [internal citations omitted]).[FN3]
In the instant matter, while Plaintiff asserts, in the first part, that her attorney never provided her with as Spanish Language interpreter, Plaintiff fails to detail within her moving [*9]papers even one instance when she asked her attorney to provide her with Spanish Language interpreter during the entirety of the instant divorce action—including when this matter settled on December 5, 2023. The record reflects that a Spanish Language interpreter was provided, upon request, for the first time on the return date of the instant order to show cause, March 13, 2024. Moreover, Plaintiff fails to detail whether she requested a Spanish Language interpreter during prior meetings with her own attorney or, as explained in further detail hereinbelow, during her examination before trial.
While Plaintiff further asserts, in the second part, that the Court never provided her with a Spanish Language interpreter, she neglects to disclose within her moving papers—as noted by this Court on the return date of March 13, 2024—that the Preliminary Conference Stipulation/Order, dated December 1, 2020, which was signed by both parties and their respective counsel, and "So Ordered" by the Court, reflects that neither party required the assistance of a foreign language interpreter.[FN4]
Thus, the Court, reliant on this Stipulation/Order, and without an express request by either Plaintiff or her prior attorney for a Spanish Language interpreter on December 5, 2023, proceeded to not only allocute the parties on the underlying Stipulation, but to conduct an Inquest on grounds on December 5, 2023, wherein Plaintiff provided testimony on same, without issue. This Court finds that a review of the transcript of December 5, 2023, reflects cogent answers by Plaintiff to questions in the English language.
Moreover, Defendant submits a copy of Plaintiff's resume with his opposition papers, which provides, in pertinent part, that Plaintiff is "Fluent in Spanish and English." The resume's accuracy or authenticity is not contested by Plaintiff within her reply papers.
Defendant further submits with his opposition papers a copy of an eighty-five-page transcript (not inclusive of the appendix pages) of Plaintiff's virtual deposition that took place on February 17, 2022, during the pendency of this divorce action, which transpired without a Spanish language interpreter present. Contrary to Plaintiff's assertions in reply, a review of Plaintiff's deposition testimony on February 17, 2022, reflects that, notwithstanding the absence of any interpreter and contrary to Plaintiff's explanations in reply—much like her testimony during the allocution and Inquest on December 5, 2023—Plaintiff provided cogent responses to questions posed by Defendant's Counsel, all in the English language.
This is not to mention that Plaintiff's supporting and reply affidavits are written in the English language and are not otherwise accompanied by a corresponding affidavit by a third party, asserting that they translated Plaintiff's affidavits from English to Spanish for the benefit of Defendant's comprehension (see e.g. Reyes v Arco Wentworth Management Corp., 83 AD3d 47, 54 [2d Dept 2011]; CPLR 2101 [b]).
Lastly, Plaintiff's allegations regarding her alleged want of understanding are belied by the express terms of the parties' Stipulation (i.e., Articles XXIII and XXV therein, quoted in part hereinabove) and the appended allocution affidavits (see Schultz, 58 AD3d at 617; Sabowitz v Sabowitz, 123 AD3d 794, 795 [2d Dept 2014]) and the open-court allocution that took place on December 5, 2023, partly quoted hereinabove. See Bradley v Bradley, 167 AD3d 489, 489 (1st Dept 2018); Klauer v Abeliovich, 120 AD3d 1114, 1115 (1st Dept 2014).
In summary, as a matter of first instance, it was incumbent upon Plaintiff to demonstrate an active effort to attempt to understand the Stipulation before she executed same by seeking a translation or interpretation of same within her moving papers, which she failed to do until after the parties executed their Stipulation. This failure is fatal to her application to set aside the Stipulation for a want of understanding same.
V. Defendant's cross-application for an award of counsel fees for having to defend against the instant order to show cause is hereby GRANTED pursuant to the plain language of the parties' Stipulation.
Paragraph G of Article XXIII of the parties Stipulation provides that:
"[i]f either Party by any action, proceeding, defense, counterclaim or otherwise, seeks to vacate or set aside this Agreement or declare any of its terms and conditions as invalid, void, or against public policy, by any reason including but not limited to, fraud, duress, incompetency, overreaching, or unconscionability, the unsuccessful Party shall reimburse the other Party and be liable for any and all such Party's reasonable attorney's fees and expenses provided and to the extent that such action, proceeding, counterclaim or defense results in a decision, judgment, decree or order dismissing or rejecting said claims. However, to the extent that such action, proceeding, counterclaim or defense results in a decision, judgment, decree or order vacating or setting aside this Agreement or declaring any of its terms and conditions invalid, void or against public policy, then, and to the extent, the Party advocating the position sustained by the decision, judgment, decree, or order, shall be entitled to recover from the other Party attorney's fees and expenses reasonably incurred in asserting the successful claim or claims. Further if the matter is settled prior to the entry of a decision, judgment or decree, the prevailing Party is entitled to such reasonable counsel fees and expenses as determined by the court to be fair and reasonable under all of the facts and circumstances existing at that time."When there is a valid and subsisting agreement that governs the obligations of the parties in the matter of the payment of counsel fees, the agreement controls and trial courts should enforce such provisions (see e.g. Sieratzki v Sieratzki, 8 AD3d 552 [2d Dept 2005] cf. Matter of Berns v Halberstam, 46 AD3d 808, 809-810 [2d Dept 2007]).
Initially, as a procedural matter, this Court exercises its discretion, in the interest of justice, to entertain the affirmative relief set forth in Defendant's opposition papers, notwithstanding the lack of a formal notice of cross-motion, as it the request for counsel fees is sufficiently interrelated with the pending motion to set aside the underlying Stipulation, in light of the express provisions of Paragraph G of Article XXIII of the parties' Stipulation (see Trevino v Pray, 217 AD3d 592 [1st Dept 2023]).
In the instant matter, as (1) Plaintiff has sought court intervention to vacate or set aside the parties' Stipulation, arguing that it was manifestly unfair and unjust and/or unconscionable, and/or otherwise executed due to a unliteral mistake; and (2) by judicial findings, Plaintiff has been found to have been unsuccessful; and (3) said findings have been reduced to a written Interim Decision and Order on Motion, the Court finds that Plaintiff shall be "liable for any and all [of Defendant's] reasonable attorney's fees and expenses" in having had to defend against this [*10]motion.
Contrary to Plaintiff's arguments in reply, the disparity of income between the parties is irrelevant, given the express terms of Article XXIII the parties' Stipulation.
Therefore, Defendant's Counsel is hereby directed to file an Affirmation of Services with corresponding invoices and/or timesheets for legal fees incurred in defending against Plaintiff's underlying Order to Show Cause within fifteen (15) days of the instant Interim Decision and Order on Motion. The Court shall issue an Interim Order after such time, and the motion shall be deemed disposed thereafter.
CONCLUSION AND DECRETAL PARAGRAPHS
Plaintiff has failed to set forth a prima facie case to establish that the Stipulation was manifestly unfair and the product of overreaching; that the Stipulation was unconscionable; that her unilateral mistakes were induced by any fraudulent or wrongful conduct by Defendant; or that the Stipulation should be set aside due to her want of understanding. Defendant has established his entitlement to an award of counsel fees for having to defend against Plaintiff's application in furtherance of the express terms of the parties' Stipulation, which shall be addressed after the submission of an affirmation of services and corresponding invoices as set forth hereinabove.
Based upon the record provided herein and the foregoing findings, it is hereby
ORDERED AND ADJUDGED, that Plaintiff's application for an Order vacating and/or setting aside the parties' written Stipulation of Settlement, executed before this Court on December 5, 2023, is hereby DENIED, without a hearing; and it is further
ORDERED AND ADJUDGED, that Defendant's cross-application for an Order awarding Defendant counsel fees for having to oppose the instant motion is hereby GRANTED, to the extent that Defendant's Counsel is hereby directed to file an Affirmation of Services with corresponding invoices and/or timesheets for legal fees incurred in defending against Plaintiff's underlying Order to Show Cause within fifteen (15) days of the instant Interim Decision and Order on Motion; and it is further
ORDERED AND ADJUDGED, that any and all other relief not expressly addressed herein is hereby DENIED; and it is further
ORDERED, that the Clerk of the Court shall adjourn this Order to Show Cause (Motion Sequence No. 01) for a period of fifteen (15) days; and it is further
ORDERED, that upon the Court issuing an Interim Order addressing counsel fees as indicated hereinabove, the instant Motion Sequence shall be disposed; and it is further
ORDERED, that the time by which Plaintiff is to file the proposed judgment of divorce; the proposed findings of fact and conclusions of law; the proposed qualified medical child support order; and any and all other documents required by statute or court rules is hereby extended for another sixty (60) days.
This constitutes the Interim Decision and Order on Motion of this Court.
Dated: June 17, 2024
Bronx, NY
E N T E R :
___________________________________
A.J.S.C.
Footnotes

Footnote 1:The parties executed a separate "Stipulation to So Order" that was eventually "So Ordered" and marked as Court's Exhibit 2 for purposes of allowing Plaintiff to begin receiving basic child support payments through the Support Collection Unit forthwith.

Footnote 2:The Court takes judicial notice that prior jurist assigned to this matter had issued an "Order Appointing Appraiser," to wit, Jeskell Appraisal Services, on December 1, 2020, filed as NYSCEF Document Number XX.

Footnote 3:However, the matter was remanded to the trial court for a hearing on the maintenance provisions of the stipulation of settlement only (see id. at 1177).

Footnote 4:The Court takes judicial notice of the Preliminary Conference Stipulation/Order, dated December 1, 2020, and filed as NYSCEF Document Number XX, for purposes of addressing this Order to Show Cause.